Gaither *vs.* Gaither *et al.*|

Was it not revocable in the lifetime of the maker ?   Could it interfere with the claims of creditors ?

---

No. 137.—ELIZABETH GAITHER, plaintiff in error, *vs.* HENRY GAITHER and others, defendants in error.

[1.] If a person has capacity to make a will, and a paper is read over to him as his will, and he signs it as his will, a presumption arises that he knows the contents of the paper ; but the presumption is not a conclusive one.

[2.] A son, married but still young, gave a large legacy to the children of the father, and whilst the son and his wife were residing with the father. The wife attacked the will, alleging, amongst other things, that the will was procured by the father, and by the exercise of undue influence on the son : *Held,* that the relation of parent and child, and the residence of the son under the parent's roof, were facts to be taken into consideration by the Jury, in determining the questions raised by the said allegations of the wife.

[3.] The Court was requested to charge as follows: "That if the Jury shall find, by the evidence, that the testator was not able to criticise, accurate- ly, the terms and provisions of the will or the estates created thereby, yet, understanding merely that he was making a will, that the testator did not have sufficient testamentary capacity:" *Held,* that in refusing the request, the Court did right.

Caveat to will.   On appeal, in Putnam Superior Court. Tried before Judge Hardeman, September Term, 1856.

Brice T. Gaither died September, 1853, and by his will, gave the whole of his property to his wife for life, and the one-half to his brothers and sisters at her death.   His widow qualified as executrix of the will.   Afterwards, in 1856, she moved to revoke the probate of the will, on the following grounds:

1st.  Because of the want of testamentary capacity.

2d.  Because the will was written at the dictation of Henry Gaither, father of the deceased.

3d.  Undue influence of Henry Gaither.

Geo. F. Pierce, one of the witnesses to the will, testified, that he witnessed the will on the night testator died; testator was powerfully excited in a prospect of death, and an avowed certain assurance of salvation; saw no evidence of delirium; when the will was spoken of, consented that his father and Luther Smith should retire for the purpose of writing it; and when they returned, and the will was read, he seemed to understand and be satisfied with it.   Witness was sent for between 12 and 2 o'clock at night; the messenger went after Smith to write the will; testator was much excited, and his religious fervor manifested itself by expressions of praise to God, and in terms of great affection for his wife.

Dr. Henry Gaither went to the bedside to talk to him about his will; Dr. H. Gaither first spoke of a will; when the will was read, testator made no reply, but by look and gesture, as witness understood him, assented to it.   He was told to sign it, and did sign it.   I did not consider him in a business frame of mind, or as able to criticise, accurately, the terms, provisions and limitations of the will or the estate created thereby, but yet, as knowing what he was about, and as acting understandingly.

William Bass, another witness to the will, was with testator for an hour before making the will; conversed ration-

ally.   After the will was read in presence of Mrs. Gaither, testator asked his wife if it suited her; she answered that it did, and he then signed it.   When Mr. Smith came, he and Dr. Gaither had some conversation; they then went together to the bedside; Dr. Gaither told Brice, if he wished to make a will, Mr. Smith would arrange it; the reply was not heard by witness.   Dr. G. then asked if he wanted to dispose of his property in the manner he had told him, Dr. G.?   Brice said he did.   Smith and Dr. G. then retired to write the will.

This witness was asked if he did not write a letter to Asbury A. Adams, dated "Oxford, Ga. Oct. 9th, 1855," in which he said, "I was present when Luther and the old Dr. went to Brice's bed for the purpose, as I suppose, of ascertaining the manner in which he wished his property disposed of."   He admitted writing such a letter, and supposed it was of that date.

Luther M. Smith, the other witness, confirmed the others as to his capacity.   Testator was highly excited religiously; he did not seem to be engaged about the disposition of his worldly goods; he thought and said he was dying; Dr. Henry Gaither dictated the provisions of the will to witness, who wrote it.   The day after the will was made, witness remembered that he was told to give one-half of the estate to the wife absolutely, and that he had forgotten to give her the half of the estate after her life estate.   He called on Dr. Henry Gaither and told him of the mistake; he expressed a willingness to correct it, and said he would have it attended to; witness called two or three times to have it done; it never was done.   Testator asked his wife if she was willing to the will; she said she was satisfied with any arrangement he might make.   He supposes testator was in a frame of mind which would admit of his attention to business, but not so likely to criticise the terms and provisions of a will as he would have been under other circumstances.

There was other testimony as to his capacity during his sickness.

The caveator offered in evidence a bill of *ne exeat* filed by the Gaithers, claiming the whole estate in remainder, and praying a *ne exeat* against Mrs. Gaither; which bill, after it was served, was dismissed by complainants.

Wm. D. Luckie, Ordinary of Newton County, proved that Dr. Gaither propounded the will for probate, and was the active agent in having the same recorded. Subsequently, Dr. Gaither brought Mrs. E. Gaither to the house of witness, where she was qualified as executrix.

In answer to the first cross-interrogatory, this witness testified as follows: "It is usual, where ladies have the management of estates, for some male friend to transact the most of the business, particularly the active, for them. Ladies, generally, are deficient in comprehending and understanding matters pertaining to the management of estates when they first undertake them. As far as my observation extends, they do generally rely on some male friend for assistance and direction. Mrs. E. Gaither said very little when she was sworn in; but from what little she did say, she seemed to understand as much of the duties of her office as many others in a similar situation having no experience. It is a common thing for some male friend to attend to the business in the Ordinary's office for ladies, when they are about to undertake the management of estates. There was nothing done in this from what is frequently done in similar cases."

This was objected to as irrelevant. The Court over-ruled the objection; and to that decision plaintiff in error excepted.

Caveator then offered in evidence the letter from Bass to Adams, referred to in the testimony of Bass, for the purpose of using the same to impeach Bass. The Court rejected it as evidence, and this decision is assigned as error.

It was in evidence, that almost the entire estate owned by Brice T. Gaither he received from his marriage with his wife, which occurred about two years before his death. It was also proved, that testator's negroes had been working a piece of land which he got from his father and claimed as his own,,

but in his will the land is spoken of as the property of his father.

The Court charged the Jury as follows:

" That the movant in this cause is seeking to set aside the will of testator on two grounds, viz:
1st. Want of testamentary capacity.
2d. Undue and illegal influence."

When the Jury retired, movant's Counsel stated to the Court that he had omitted one of the grounds of caveat. The Court offered to call the Jury back, stating that he would charge on that ground, and what his charge would be. Counsel not urging the recall of the Jury, it was not done. Error is assigned on this proceeding.

The Court also charged the Jury—

" Gentlemen, something has been said, in the argument of this cause, about the unreasonableness of this will. The Court charges you as law, that a man may make just such a will as he pleases, even if he thereby cuts out his wife and children; that whether this is such a will as you or I might make, under the circumstances, is no objection to the will, if testator had capacity to make the same."

The Court further charged the Jury—

" Gentlemen, I have no hesitancy in expressing to you the opinion, that the movant in this case gets the other one-half the property not disposed of by the will."

All which charges are now assigned as error.

Counsel for movant requested the Court to charge the Jury in the following words, which the Court refused to to charge—

1st. "That if the Jury shall find, by the evidence, that the testator was not able to criticise, accurately, the terms and provisions of the will, or the estates created thereby; yet, understanding merely that he was making a will, that the testator did not have sufficient testamentary capacity."

2d. "That if the Jury shall find said facts to be true, the will must be set aside, unless the evidence shows that the testator gave instructions in the presence of witnesses as to how he wished his property disposed of, and the mere reading of the will over to the testator, after it was written, and his assent to it, without more, does not do away with the necessity of instructions, especially if the Jury shall find that in addition to the inability of the testator to discriminate as to the contents of the will, that the will was prepared by the father of testator, who naturally had the confidence of testator, and the children of which father took estates under the will."

3d. "If the Jury shall find that the testator gave no instructions as to the contents of his will, in the hearing of the witnesses, that it is not sufficient to sustain the will, that it was read over to him, unless he understood the contents of the will."

Which 3d charge the Court gave to the Jury, but added as follows :

"That if the Jury shall believe, from the evidence, that the will was read to testator, and he had capacity to make the same, he is presumed to have known its contents."

Counsel for movant assigns as error said charges and refusals to charge, and the words added to the request of Counsel for movant.

Cone; Wingfield; Adams, for plaintiff.

Nisbet; Davis, for defendant.

*By the Court.*—BENNING, J. delivering the opinion.

The paper admitted to probate as the will of Brice T. Gaither was in the following words :

" GEORGIA, NEWTON COUNTY :

I, Brice T. Gaither, of the State and county aforesaid, declare and publish the following to be my last will and testament :

I desire, in the first place, that all my debts be paid as soon as it can be conveniently done.

Secondly. That should there be born unto me a posthumous heir, or heirs, that in that event, my estate be equally divided between my wife, Elizabeth Gaither, and said heir or heirs ; but should no heir be born of said wife unto me, that my wife have a lifetime interest in the whole estate ; but at her death, one-half of said estate I bequeath to my brothers, Augustus Longstreet Gaither, Eli D. Gaither, William H. Gaither, Herbert B. Gaither and Alexander Means Gaither, and my sisters, Mary Read Gaither and Margaret Ella Gaither, to be equally divided between them. It is my wish that none of the negroes belonging to my estate should be sold unless it shall be found necessary in order to prevent the separation of husband and wife, or except in cases of habitual insubordination. I wish that my father, if it be agreeable to his feelings, permit my negroes to remain on his farm, at the place where they now are, until they can be removed to some other suitable place.

And I do hereby nominate and appoint my beloved wife, Elizabeth Gaither, to be my sole executrix.

In testimony whereof, I have hereunto set my hand and seal, this the 16th September, 1853.

BRICE T. GAITHER. [L. s.]

Signed, sealed, declared and published in the presence of

us, the subscribers, who subscribed in the presence of the testator, and in the presence of each other.

GEO. F. PIERCE,

LUTHER M. SMITH,

WM. A. BASS."

The motion to set aside the probate was founded on the three grounds mentioned in the foregoing statement of the facts, and also on another, to-wit: that Mrs. Gaither did not participate in the proceeding for probate; that the paper was propounded for probate by Henry Gaither without consultation with her, and without authority from her.

The first exception was, to the admission as evidence of the answer of Luckie to the first cross-question put to him. Was that whole answer irrelevant?

One of the issues was, whether Mrs. Gaither participated in the proceedings for probate?

A part of this answer amounts to a statement, that Mrs. Gaither was "sworn in" as executrix. But if she was sworn in as executrix, she did participate in the proceeding for probate.

This part of the answer, therefore, *was* relevant to the issue last aforesaid.

As to the rest of the answer, my own opinion is, that it was not admissible. Judge LUMPKIN, the only other member of the Court presiding in the case, inclines to think that it was admissible.

The second exception raises the question, whether the letter of a witness may be read in evidence to impeach his credit, if the letter has not been previously exhibited to him?

This is an important practical question; but yet, it was submitted to the Court almost without argument. After bestowing a good deal of labor on the question, we have not been able to satisfy ourselves as to the answer it should receive. And therefore, as the decision of the question is not indispensable to either side, we postpone it for a full Court.

The next exception was, to the omission of the Court to

charge the Jury on one of the grounds of the motion to set aside the probate. If there was any error in this omission, the Counsel for the plaintiff in error waived it. The Court offered to recall the Jury and charge them on the point, and stated what its charge would be. The Counsel for the plaintiff in error failed to avail themselves of this offer. And in doing so, they waived their right of complaint. If they had accepted the offer, the whole ground of objection would have been immediately taken from under them. By not accepting the offer, they showed that they preferred the Jury to go uncharged on the point, rather than to receive the charge which they knew the Court had in store for the Jury.

One of the charges of the Court was as follows: "Gentlemen, I have no hesitancy in expressing to you the opinion, that the movant in this case gets the other one-half—the property not disposed of by the will."

This charge was occasioned, it is probable, by the following facts disclosed by the evidence : Brice T. Gaither gave instructions for the guidance of the person who was to write his will; and a part of the instructions was, that a bequest should be inserted in the will conveying to his wife, absolutely, one-half of the whole of his property. The person who drew up the will forgot to insert this bequest in the draught. The draught was read over to Brice T. Gaither, and he signed it without adverting, in any way, to its not containing this bequest.

From these facts, it was, no doubt, argued to the Jury for Mrs. Gaither, that Brice T. Gaither, at the time when he signed the will, had not sufficient capacity left to perceive the absence of this bequest; or that if he had, he was so much under an undue influence proceeding from his father that he could not make the absence of the bequest a reason for declining to sign the will.

Now the charge, it is likely, is what the Court considered as called for by these facts, and this argument drawn from them; and it seems to have been intended by the Court as

something which the Jury were to take as a complete answer to the argument.

In this view of the charge, was the charge right? That depends upon this: Did Brice T. Gaither *know* that the law was what the charge stated it to be, viz: Such that it would give to Mrs. Gaither the half of his estate not disposed of by the will? For it is manifest, that if Brice T. Gaither did not know that the law would do this, that the law would do it could not in any way have affected his conduct.

Now whether Brice T. Gaither did or did not know this of the law, was a question of fact, and therefore, a question for the Jury.

The charge, therefore, we think, was not full enough. We think that the charge, after stating as it did, what the law was as to the undisposed of property, should have added, that if Brice T. Gaither knew that such was the law, the fact would go far towards being an answer to the argument, that his signing a will which did not contain the bequest aforesaid, was evidence of incapacity or of undue influence; but that if he did not know that such was the law, then that such was the law, would not go any part of the way towards answering that argument; and that in that case, the value of the argument was to be determined by comparing the facts on which the argument was founded with the other facts in evidence.

One of the requests of Mrs. Gaither's Counsel was, that the Court would charge as follows: " If the Jury shall find that the testator gave no instructions as to the contents of his will in the hearing of the witnesses, that it is not sufficient to sustain the will that it was read over to him, unless he understood the contents of the will." And this the Court did charge, but with the following addition: " That if the Jury shall believe, from the evidence, that the will was read to testator and he had capacity to make the same, he is presumed to have known its contents." We take it for granted that the Court meant by this, that if Gaither had capacity to make a will, and this will was read to him, then a presump-

tion arose that he knew the contents of this will, and that
the presumption was one not to be affected by any of the
other things contained in the evidence; that is, that the pre-
sumption was a conclusive one.

Is it true, then, that if a person has capacity to make a
will, and a paper is read over to him as his will, and he signs
the paper, that it is to be conclusively presumed that he knows
the contents of the paper? We think not. In such a case, a
presumption that the person knows the contents of the paper,
does, no doubt, arise, but then this presumption is one that
is open to rebuttal; and one for the purpose of rebutting
which, resort may be had to all the facts of the case in
search of rebutting matter. *Zacharias vs. Colles*, (3 *Phil.*
*Eccl. Rep.* 176.)

Say, then, that although the facts that Brice T. Gaither
was a person capable of making a will, and that this paper
was read over to him as his will, raised the presumption that
he knew the contents of the will; yet, that the presumption
thus raised was subject to rebuttal, the question is, was there
anything in the evidence to require of the Jury to consider
the question, whether the presumption was not rebutted?.
And the answer is, that there were several. To these I will
now refer.

A part of the testimony of one of the witnesses was as fol-
lows: "When I entered the room, I found the testator pow-
erfully excited in a prospect of death, and an avowed, cer-
tain assurance of salvation"; "he was strongly excited at
the prospect of death, and professed to be triumphantly hap-
py"; "he did say and think he was dying"; "he did say, in
reference to his soul's welfare, that he was in his right mind,
and not deluded. And his religious fervor did manifest itself
by expressions of praise to God, and in terms of great affec-
tion for his wife."

Now I think that it may be assumed that the attention
which a mind, in such a condition as this, would be likely to
bestow upon the reading of any paper that concerned only
an affair of this world, would be, to some extent, feeble and

fitful, wavering and divided. If so, then, in proportion to, the extent to which the attention would be thus affected, would the weight of any facts going to show that such mind did not comprehend the contents of the paper be increased.

And there were facts in this case which went, more or less,. to show that Brice T. Gaither did not comprehend the contents of the paper which was read to him.

For it was in the evidence, as we have already seen, that Brice T. Gaither gave instructions as to what his will was to contain, and that one of the things which, according to the instructions, it was to contain, was a bequest to his wife of one half of all his property ; and yet, that although the paper prepared under the instructions did not contain that bequest, he signed it as though it did.

And it was in the evidence, that he had claimed as his own the place on which he was keeping his negroes; and that although the paper recited or assumed that this place was his father's, he yet signed the paper as though it contained. no such recital or assumption.

It was also in the evidence, that the person to whom he gave the instructions was his father, under whose roof he and his wife were residing, and that he, though of age and married, was still a young man ; and that the instructions for the will, the writing of the will, and the reading of the will to the testator, must all have taken place within an hour or some other short space of time—act following act in rapid. succession. Under such circumstances, might not Brice T. Gaither have felt that he would be safe in taking the paper on trust ? If he did so feel, it is not unlikely that he gave but a negligent attention to the reading of the will.

These were facts sufficient to require of the Jury, that they should take up and consider the question, whether the presumption was not rebutted—the presumption that Brice T. Gaither, being a person of sufficient capacity to make a will, and having had this will read over to him, knew the contents of this will.

[1.] We think, therefore, that what the Court should have

told the Jury is this : that if Brice T. Gaither was a person of capacity to make a will, and this paper was read over to him and he signed it, a presumption arose that he knew the contents of the paper, but that the presumption was one subject to rebuttal; and that recourse might be had to all the facts in evidence, in search of matter for its rebuttal.

In one part of the charge, the Court said that " in determining whether testator was unduly influenced, the Jury must consider his capacity at the time, his strength or weakness of character, and his general order of mind."

[2.] Although we agree with the Court below in what it thus said, yet we think that the Court might, with propriety, have gone further, and told the Jury that they ought also to consider the relation of father and son existing between the testator and Henry Gaither, whose children, mostly minors, were made, by the will, to take the half of what might remain of the estate at Mrs. Gaither's death ; and the fact, that at the time when the will was made, and for some time before, the son and his wife resided under the roof of the father— the son, though married, being still quite a young man.

Gifts by the child to the parent—the ward to the guardian—the principal to the agent—the *cestui que trust* to the trustee—and similar gifts, between persons holding a similar relation to each other, labor under the suspicion of having been obtained by the donee by an abuse of the influence which the relation gives him over the donor. (*Huguenin vs. Basely*, 14 *Ves.* 273 ; 2 *White and Tudor*, 430 ; *Ingram vs. Wyatt*, 3 *Eccl. R.* 167.)

And that the gift may happen to be to the *children* of the parent, of the guardian, &c. instead of to the parent, to the guardian *himself*, &c. does not take the gift out of this species of suspicion, however it may weaken the quality or degree of the suspicion.   Parents will do nearly as much, if not quite as much, for their children as they will do for themselves.

One of the requests made of the Court by Mrs. Gaither's Counsel was, to charge the Jury as follows : "That if the

Jury shall find, by the evidence, that the testator was not able to criticise, accurately, the terms and provisions of the will or the estates created thereby; yet, understanding merely that he was making a will, that the testator did not have sufficient testamentary capacity." This request the Court refused. Was the refusal proper ?

[3.] Whoever has capacity enough to understand common ideas, when plainly expressed, has capacity enough to make a will.

*Godolphin* says, " Here note, that by the laws of this land, he that can measure a yard of cloth, or rightly name the days of the week, or beget a child, shall not be accounted an idiot or a natural fool ; yet, it will not be indisputably granted that an act so natural as the begetting of a child can so qualifie a natural fool as to render him, in the charitable construction of law, testable ; for if he be such a natural fool as that, though of lawful age, he cannot declare of about what age he is, nor number twenty, nor knoweth his natural parents by their several names and relations, or the like easie questions, such an idiot is undoubtedly intestable. Notwithstanding all which, if it may appear by sufficient circumstances and conjectures that such idiots had the use of reason and understanding at such time as they did make their testament, then are such testaments good at law. And yet, if he be an idiot indeed, albeit he may make a wise, reasonable and sensible testament as to the matter of it, yet it will be void." (*Orph. Legacy*, 25.)

Now a man may have the degree of capacity here indicated, and more too, and yet not be able to " criticise accurately" the terms and provisions of a will; for whatever be the import of the expression, " to criticise accurately the terms and provisions" of a will, that import must, at least, be some mental feat of greater difficulty than that of understanding common ideas—" easie questions"—when expressed with the common degree of plainness.

It is not necessary to advert, particularly, to the other ex-

ceptions.    They are such that the disposition which has been made of these, is a sufficient disposition of them.

A new trial is granted.