444        SUPREME COURT OF GEORGIA.

Causey, ex'or, vs. Wiley, Banks & Co. et al.

_____

SAMUEL H. CAUSEY, ex'or, plaintiff in error, vs. WILEY, BANKS & Co., and others, defendants in error.

[1.] It is competent to prove a fact which tends to establish a matter not directly in issue, but which when proven, may be entitled to some weight, on the trial of the main issue between the parties.

[2.] Facts which came to the knowledge of a witness, by reason of his being connected with the case as attorney at law, cannot, under the statute, be given in evidence by him.

[3.] If there be legal capacity, and no imposition or fraud, a contract of suretyship is binding; but weakness of capacity on the part of the surety, and the fact that it is a contract of suretyship, may be considered on the issue of fraud in procuring it.

[4.] A charge to the jury, that "fraud is not to be presumed, but must be proved by those alleging it," unexplained, is not a legal charge in a case in which there is evidence of facts and circumstances tending to prove fraud.

In Equity, in Crawford Superior Court. Tried before Judge LAMAR, at September Term, 1858.

This was a bill originally filed by Lemon M. Causey, against Wiley, Banks & Co., and others. The complainant subsequently dying, his executor, Samuel H. Causey, was made the party complainant, in whose name the cause proceeded to a hearing.

The object of the bill was to relieve complainant from liability on three promissory notes, each for $1,200 00, given to Wiley, Banks & Co., signed by William J. Causey, as princi-

pal, and the said Lemon M. Causey, as security, on the ground that said Lemon M. was induced to sign said notes, as surety, by the false and fraudulent misrepresentations of defendants. Complainant was the father of said Wm. J., and the bill alleges that "owing to his bodily and mental infirmities, brought on by a stroke of paralysis, under which he labored and languished for eighteen months or thereabouts, previous to the time of signing said notes," most of complainant's business was in the hands of his son, the said William J.

The case was heard upon the bill, and answers and proofs.

The jury, under the charge of the Court, found for the defendants; whereupon, complainant moved for a new trial, upon the following grounds, viz:

1st. Because the Court erred in admitting the testimony of Nicodemus Andrews, and in overruling plaintiff's objections thereto, viz: that it was irrelevant, and was *res inter alias acta*, not tending to illustrate the real issues made by the pleadings.

2d. Because the Court erred in admitting the testimony of Francis H. Murdock, and in overruling plaintiff's objections thereto, viz: that it was irrelevant in this, that the situation of William J. Causey, when he commenced business in 1849, did not tend to illustrate any idea made by the pleadings in the cause.

3d. Because the Court erred in admitting the interrogatories of James A. Miller, and in overruling plaintiff's objections thereto, viz: that the said testimony referred to a letter or letters which were not produced, or accounted for, or exhibited to the answers of defendants, or either of them; that the testimony related to a transaction wholly and entirely void, it being an attempt to make Lemon Causey liable for the debt of another, without any writing signed by said Lemon, or another authorized by him, charging him with the payment of such debt, and because if admissible, notwithstanding the foregoing objections, it was irrelevant, and rela-

ted to a transaction and credit, other than, and wholly distinct from, the debt or demand now in controvery.

4th. Because the Court erred in admitting the testimony of Harrison H. Collier, and in overruling plaintiff's objection thereto, viz: that the same was irrelevant.

5th. Because the Court erred in admitting the will and codicil to Lemon Causey's will, said codicil dated 18th July, 1853, and in overruling plaintiff's objection thereto, viz: that the same was irrelevant, and tended to illustrate no issue made upon the pleadings.

6th. Because the Court erred in admitting the deed from Lemon Causey to Samuel H. Causey, John Causey, Littleberry Causey, and James M. Sanders, dated 17th May, 1853, and in overruling plaintiff's objection thereto.

7th. Because the Court erred in rejecting the testimony offered by Green P. Culverhouse, Esq., to prove the contents of certain interrogatories which had been sued out in the case for Elizabeth Walker, had been read on a former trial, the said Elizabeth having been proven to have died since said former trial, and he, the said Green P. Culverhouse, having stated that he was counsel in this cause, acquired his knowledge of the contents of said interrogatories during his relation as counsel to the cause, and as he believed, in consequence of that relation, as but for that fact he did not think he should have paid attention to the reading of said questions and answers in open Court, or should have read them out of Court, as he had frequently done, though he was present and heard them read on the former trial in open Court, the plaintiff also stating that he had no other witness that he knew of, by whom he could prove the contents of said interrogatories and answers, and the testimony therein given having been admitted to be material.

8th. Because the Court erred in stating in the presence and hearing of, and to the jury, in response to a question propounded by one of respondent's counsel, while addressing the jury, that that portion of Montfort's answer to complain-

ant's amendment, in the words following, viz: "this defend-
ant further answering, saith, that he had no reasons to believe
then, nor does he now believe, that the said Lemon M. Cau-
sey, at that time, from the infirmity of age, disease or other
cause, either mental or bodily, was incapable of knowing his
liability in signing said notes," &c., was directly responsive
to the allegations in said amendment. [Abandoned.]

9th. Because the Court erred in charging the jury, as fol-
lows: "I am requested by the defendant's counsel to charge
you as to the consideration of this contract. All I have to
say as to the consideration of the contract for which these
notes were given, is this, that it was lawful for L. Causey to
become security to his son for the payment of these notes,
and if he had the legal capacity to contract, that no equita-
ble incapacity can be alleged so far as a want of considera-
tion is concerned. But few securities are ever benefitted by
incurring such liabilities, but if done voluntarily and without
fraud, they are nevertheless liable. The authorities read by
complainant's counsel, as to inadequacy of price, and in case
of gross and palpable inadequacy, in which equity will su-
pervene and relieve, only establishes the principle that a
Court of Equity will lend its aid in relief of such cases from
the presumption of fraud which arises, as no man would be
presumed to enter into such contracts, unless fraud or impo-
sition was practiced upon him, the consideration being but
of little or no inducement to do so."

10th. The Court erred in all that portion of its charge, re-
lating to the weak and imbecile condition of complainant's
mind, and the purpose for which evidence of his mental state
was admitted, and the influence it should have upon the ju-
ry, and in narrowing the issue made by the pleadings to a
question of fraud, or no fraud—thereby excluding the jury
from a consideration of the question of undue influence, and
the circumstances growing out of the confidential relations
existing between some of the parties.

11th. Because the Court erred in referring in general terms

to the authorities read to the Court from Story's Equity, by complainant's counsel, and in not reading over the sections so read by complainant's counsel, and expounding them to the jury, and in adding to this part of his charge, "but the Court also charges you, that fraud or no fraud is also one of the controlling elements of the case."

12th. Because all those portions of the Court's charge, relating to fraud, weakness of mind, and inadequacy of consideration, are general and abstract, not applied to the particular facts and circumstances of the case, and well calculated to confuse and mislead the jury.

13th. Because the verdict of the jury is contrary to law and equity.

14th. Because said verdict is against evidence, and without evidence to support it.

15th. Because said verdict is decidedly and strongly against the weight of evidence.

The Court overruled the motion for a new trial, and complainant excepted.

CULVERHOUSE & ANSLEY; GEO. W. NORMAN; and S. HALL, for plaintiff in error.

COOK & MONTFORT, *contra.*

*By the Court.*—MCDONALD J. delivering the opinion.

[1.] This voluminous record presents points on the single issue, whether the original complainant was circumvented into the signature of the notes as surety for his son, William J. Causey. On the trial of an issue of that sort, great latitude is allowed in the admission of evidence; and circumstances, seeming to have little or no connection with the principal transaction, are often looked to, because, on a strict and close examination, they may throw light upon, and explain circumstances, which have a direct bearing upon it, and which are in evidence. Whether the explanatory circum-

stances are sufficient to defeat the force of those in support of the main issue, is a question for the consideration of the jury. In questions of fraud, it is often necessary to enquire into the *quo animo* of the parties; and circumstances to elucidate that, may be given in evidence. It may be of consequence, too, to prove a knowledge of the party said to be practiced upon, of the existence of a certain state of things which is disputed by him; and circumstances tending, even remotely, to establish such knowledge, is proper evidence. That L. M. Causey took up a note signed by W. J. Causey and L. M. Causey, given the year before the matter in issue took place, taken in connection with the fact that W. J. Causey had conveyed property to L. M. Causey and others, to pay off such liabilities, is admissible on the question whether L. M. Causey knew of the pecuniary embarrassments of W. J. Causey, however valueless its influence may be on that part of the issue which related to the conduct of the parties in procuring the signature of the intestate of plaintiff in error to the notes.

So it may be said in regard to Murdock's testimony. He proved that W. J. Causey was poor, but not that he was insolvent. Though poor, he purchased a stock of goods, and gave a mortgage, but there is no evidence of antecedent debts. But it is evidence to be considered, that he commenced business years before, without means, and is only admissible to prove, inferentially, that his father had knowledge of his circumstances at the beginning. It is true, that it is slight evidence that he continued to be solvent.

The evidence of Miller proved the existence of a letter, but not its contents, and is only admissible as evidence of the knowledge of L. M. Causey that his son was then without means. There is nothing in the evidence of Miller, certainly, to prove the existence of a legal or moral obligation on the part of L. M. Causey, to pay the debt in question, and it could not have been admitted for any such object. The presump-

tion is against Miller's having written such a letter as would fix a liability on him, and if he did not, the request of L. M. Causey was not complied with. For the same reason, the evidence of H. H. Collier ought to have been received.

[2.] The testimony of G. P. Culverhouse was inadmissible by the terms of the statute, and ought to have been rejected, as it was.

[3.] There is no error in the charge of the Court, in regard to the consideration necessary to support a contract of suretyship. If there be legal capacity, and no imposition, such contract is binding. On the issue of fraud or no fraud in *procuring the contract*, weakness of capacity, combined with the fact that it is a contract of suretyship, is entitled to consideration.

The prominent grounds of complaint, of the judgment of the Court below, are to be found in the 10th and 12th grounds of the motion for a new trial, and amount together, to an allegation of a want of appositeness in the charge of the presiding Judge, to the facts and circumstances of the case, as in evidence before the jury. The plaintiff's counsel relies, in support of his cause, on the principle, that although weakness of mind, short of legal incapacity to contract, is not sufficient, of itself, to invalidate the note, yet, very slight circumstances of fraud or imposition, are sufficient to set it aside, and that the Court ought to have given the jury more explicit instructions upon that point. The Court charged the jury, in substance, that in proportion to the mental infirmity of the party, he is to be supposed to be less capable of resisting importunity, and of guarding himself against the circumvention and machinations of those who meditate a fraud upon him, and that under that view of the case, if L. M. Causey was competent to contract, he was liable on the notes, and should be decreed to pay them, unless they should believe, from the evidence, a fraud was practiced on him, in the procurement of his name, as security on the notes, by Wiley, Banks & Co., or Theodo-

rick N. Montfort, the attorney at law, or some other person, with their knowledge or concurrence, and it is a settled principle that fraud is not to be presumed, but must be proved by those alleging it.

We think that this charge was too general, and not sufficiently explicit, as to the legal and equitable principles applicable to the case made by the bill, answers and proof, and especially, in instructing the jury, without further explanation, that "it is a settled principle, that fraud is not to be presumed, but must be proved by those alleging it." It was in proof, in this case, that Lemon J. Causey had been a long time afflicted with paralysis, or dead palsy, at the time he signed the notes as security for his son; some of the witnesses thought him capable of attending to ordinary business understandingly, while others believed him to be incompetent. The defendant's, creditors of William J. Causey, had heard of his embarrassments, and so well satisfied were they, that their debt was in jeopardy, that it was considered worth a trip by one of them, from Charleston to Crawford county, in this State, to attempt to secure it. He went to Knoxville, accompanied by his attorney from another county, and had an interview with the debtor, William J. Causey, who was a favorite son of his paralysed father; the creditor, the attorney, and the son, after an interview in Knoxville, went together to the house of the father, and soon induced him to sign the notes as security; the son at the time, being utterly insolvent. The imbecile father said at the time, and in the presence of the parties, according to the answers, after the notes had been signed by him, that it was the enemies of his son who had circulated reports injurious to his credit; but this declaration, indicated that he believed, at the time, that his son was solvent.

The Court, on the hearing of such a cause in equity, should give in charge to the jury, the principles on which Courts of Equity act, in reference to cases of this sort. "When the party executing an instrument, is a weak man, and liable to be

imposed upon, the Court will look upon the circumstances, and the nature of the transactions, with a very jealous eye, and will very strictly examine the conduct and behavior of the persons, in whose favor it is made. If it see that any acts, or stratagems, or any undue means have been used;" " if it see the least spark of imposition at the bottom; or that the donors," (security here) " is in such a situation with respect to the donee," (the principal in the note here) " as may naturally give an undue influence over him; if there be the least *scintilla* of fraud in such a case, the Court will, and ought to interfere." *Hill on Trustees*, *(154) 2d Am. Ed.*

In the case of *Griffin vs. Deveulle, and others,* reported in the appendix to the 3*d vol. of Wooddison's Lectures,* Lord Chancellor (Thurlow, I believe it was) remarked that " the Court would not set aside the voluntary deed of a weak man, who is not absolutely *non compos,* nor any deed of improvidence or profuseness, for these reasons merely, when no fraud appears, as was laid down by Sir Joseph Jekyll in *Osmond and Fitzroy;* but, that Sir Joseph Jekyll might have been pleased to add, that from these ingredients there might have been made out and evidenced an inference of fact, that there was fraud and misrepresentation used." The learned Chancellor seems to have laid down the sound rule, and the only rule which can protect, effectually, weak men from the machinations of artful men of superior mind, viz: that upon proof of weak mind, and that the instrument was executed without consideration, or was improvident or profuse, fraud would be inferred, and *to rebut it,* proof must be made that it was the voluntary act of the party himself, unmoved by the words or conduct of the party taking the benefit under it.

The latter part of the charge under consideration unexplained, may have misled the jury, and in all such cases, we hold that an explanation should be given, to-wit: that fraud may be inferred from circumstances. It may be proved un-

questionably, like any other charge.    Men may be convicted
of capital offences upon circumstantial evidence.    Fraud
also, may be proved by circumstances, but it is not to be pre-
sumed.    This principle may be illustrated in a manner to
elucidate the law of this case :    A. being a man of powerful
mind, trades with B., a person of weak and impaired mind ;
he purchases property from him, and pays an inadequate
price; this is proven, and the evidence stops here.    Fraud is
not to be presumed, for a man of strong mind may sell prop-
erty for greatly less than its value, and may have sufficient
reasons for it, but if it be shown that B. was a person of
weak mind, and easily imposed on, fraud may be presumed
from the combination of the two circumstances, strength of
mind on the one hand, and weakness of mind on the other,
and the great inadequacy of the price paid for the property.
The proof of these circumstances alone, would throw on
the person taking a largely disproportionate benefit under
the contract, the necessity of making proof that there was
nothing in his conduct or behavior toward the party with
whom he made the contract, showing fraud; that there
was nothing of imposition, influence or encouragement, to
trade, &c., &c.

In the case of *Chesterfield  vs. Jansen, 2 Vesey, Sr.*, 155,
*Lord Hardwick* enumerates several species of fraud, and
the law on the subject, summarily, which as it is short, I will
extract.    " 1st. Fraud arising from facts and circumstances
of imposition, which is the plainest case.    2d. Fraud may be
apparent from the intrinsic value and subject of the bargain
itself, such as no man in his senses, and not under delusion,
would make, on the one hand, and as no honest or fair man
would accept on the other ; which are inequitable and uncon-
scionable bargains, and of such, even the common law will
take notice.    A third is such as may be presumed from the
circumstances and condition of the parties contracting; and
this goes further than the rule of law, which is, that fraud
must be proved, not presumed; but it is wisely established in

a Court of Equity, to prevent taking any surreptitious advantage of the weakness, or necessity of another, which knowingly to do, is equally against conscience, as to take advantage of his ignorance. A fourth kind of fraud may be collected and inferred in the consideration of a Court of Equity, from the nature and circumstances of the transaction, as being an imposition and deceit, on other persons not parties to the fraudulent agreement." The law upon this subject is as fully stated in this extract, as it can be found in the same compass, any where, and if the principles there laid down are analyzed, it will be found, that fraud may be established by circumstances, as well as by positive proof. Indeed, like most crimes, fraud can be established, generally by circumstances only; for when men determine, deliberately, to commit a fraud, they would scarcely avow their purpose; they would rather lay their plans so adroitly as to avoid detection, and the worst frauds can often be searched out, only by circumstances pointing, more or less, directly to the object accomplished. The charge of the Court that "fraud is not to be presumed, but must be proved by those alleging it," is no doubt correct in a case to which it applies; but, in a case where either facts or circumstances tending to establish fraud, are in proof, it cannot apply. To say that fraud is not to be presumed, is equivalent to saying that it is not to be supposed to exist without proof, either positive or circumstantial. Such an isolated charge, without explanation, to do away its positive effects, cannot apply to any case where there is evidence to prove fraud, and the jury are not left to bare presumption, without facts or circumstances to support it, to set aside the alleged fraudulent transaction. In looking through this case, such facts and circumstances, we are bound to say, are in proof, as to call for a charge of the Court to the jury, that they might consider the facts and circumstances, to determine the issue of fraud or no fraud. The charge as delivered by the Court, without explanation, was well calculated to make an impression on the mind of the

Causey, ex'or  vs. Wiley, Banks & Co. et al.

jury, that in the opinion of the presiding Judge, if they found fraud in the case, it must be upon presumption alone. We are well satisfied that such was not the intention, but the absence, of such intention cannot vary the law of the case.

Judgment reversed.