Milledge *vs.* Gardner.

JOHN MILLEDGE, plaintiff in error, *vs.* JAMES GARDNER, security, defendant in error.

1. *Lapse of time*, short of the period fixed by the Statute of Limitations, may be considered by the jury, in connection with other circumstances, in determiking whether payment might be presumed.
2. A period of nineteen years and nine months had elapsed from the accrual of the cause of action to the bringing of the suit, during that time the defendant and debtor was solvent, and the plaintiff and holder of the obligation insolvent; besides this, the defendant, as security for the plaintiff, had been compelled to pay off a debt, and the parties had had a settlement of this matter, and the plaintiff had given his and another's note to a third person for the balance so paid out for him, which note had been sued to judgment by the defendant: *Held*, that these were proper circumstances to be submitted to the jury, and unexplained, were sufficient to raise the presumption of payment.

Complaint, in Richmond Superior Court. Tried before Judge HOLT, at the June Adjourned Term, 1860.

Reference is made to the opinion of the Court for the facts of the case.

SNEED, for plaintiff in error.

STARNES, *contra*.

*By the Court*—LYON, J., delivering the opinion.

This was an action in complaint by the plaintiff, John Milledge, against James Gardner, Junior, in the Superior Court of Richmond county, upon the endorsement of the defendant of the bond of one John F. McKinne, payable to the defendant, his heirs and assigns, for the sum of $2,600, dated 10th June, 1837. The bond was signed and sealed by McKinne. The endorsement was as follows:

" For value received, I do hereby assign the within obligation to John Milledge, June 10th 1837.
" JAMES GARDNER, JR."

The defendant plead payment, lapse of time, set-off, and the general issue.

The suit was commenced on the 14th day of March, 1857, nineteen years and nine months after the endorsement. The plaintiff put in evidence the bond and endorsement and closed. The defendant put in evidence several judgments at the instance of the Bank of Augusta, against the plaintiff, Ann Milledge and himself, obtained 28th January, 1843, on a note made by plaintiff, and on which the defendant and Ann Milledge were accommodation endorsers for the sum of $900, dated 5th January, 1842, and payable at the Bank of Aguusta to the order of the defendant. The execution issuing from the judgment against the defendant was satisfied by *this* payment of the principal, interest and cost due thereon, on the 2d January, 1850. The defendant also put in evidence a judgment and execution in favor of himself against the plaintiff and Ann Milledge, obtained on the 18th day of May, 1857, for the sum of $665 55 ; on a note for $960, payable to the order of Amos Whitehead, dated 25th of June, 1850, and reduced by payments on the same previously to the judgment, to the principal sum for which it was rendered. It was agreed that this note was given by the makers thereof to Whitehead for the benefit of the plaintiff, and in liquidation of the amount he had previously paid on the judgment, first above stated in favor of the Bank of Augusta.

The defendant also put in evidence three due bills made by plaintiff to himself for cash loaned : One for $25, due October 11th, 1852; one for $20, dated September 6th, 1853, and the other for $150, dated 7th September, 1853.

The defendant proved, by Thomas Barrett, that the plaintiff had been insolvent from about 1840 or 1843, and that he, the plaintiff, had owed the witness by judgment.

To this evidence the plaintiff objected on the ground that it was irrelevant. The Court overruled the objection. This constitutes the first exception in the record.

The defendant further proved, by Ebenezer Starnes, that he, the defendant, from the date of the bond sued upon, to the commencement of this suit, had been in such pecuniary circumstances and credit as rendered him able at any time

to have paid this bond.   To this testimony, the plaintiff also objected as irrelevant.   The Court overruled the objection, and this is the second exception.

The plaintiff, then, by way of rebuttal, put in evidence a letter from the defendant to himself, written previously to the execution of the bond, on the 10th of May, 1837, in reference to the transaction, as we suppose, out of which this debt grew.   As the letter is long and refers to much that is not material to the issue, I extract the substance for which it was offered, as we suppose.   It appears from this letter, for this is all the light we have on this subject, that some time before this, these parties, acting together, had raised and put into the hands of the obligor of the bond, as their common agent, the sum of $5,000, to be placed in the hands of Tracy & Gould, for the use of which Tracy & Gould were to pay them one and one half per centum per month.   McKinne had, subsequently to his receipt of the money for the purposes stated, informed the parties that the money was invested as directed; that the money was employed as directed, and on the faith of this representation the defendant had taken the whole transaction to himself and assumed the payment of the note given by plaintiff for his share of the investment. The writer had just heard of the failure of Tracy & Gould, the probable faithlessness of McKinne, and the certain loss of the $5,000.   The defendant thought as both had been imposed upon, and each had acted upon the representation of their common agent, as to the actual condition and employment of the fund, that he was not liable for that portion of the same which he had assumed to or for the plaintiff, but of this he proposed to confer with him.   The writer appeared to feel that the loss of this sum, together with another heavy one about the same time, would be disastrous to his fortune. The letter states, that the " *transaction* (is) *all important* to him *as it will embarrass* (him) *most seriously*—though it will be scarcely felt by you," the plaintiff.   Again :   " We have been deceived, and to me the deception has been fatal.   These losses will take every dollar I am worth."   Speaking of his endorsers, he says, " I can protect them from loss, and also

you, *with the exception of the one half of this amount in J. F.'s hand.*"

The Court charged the jury, "that evidence going to show the insolvency of the plaintiff and that subsequent transactions had taken place between them since the making of said bond, might be taken into consideration by them as presumptive evidence of payment, though the statutory bar of twenty years had not run against the bond; that they could take into consideration the pecuniary circumstances of the parties and the transactions between them, as testified to and adduced in evidence; and that they were authorized, if there was such evidence, to consider it as presumptive evidence of payment, though the paper sued on had not been barred by the statute."

To this charge the plaintiff excepted, and this forms the third and last exception in the record.

The charge is copied from the bill of exception, and in it the presiding Judge did not think he was fairly represented. He, however, did not think proper to alter the form in which it was placed by the counsel who prepared it; but added, after he had signed the certificate required of him by law, and which completes that record, the following explanation: " I do not think the instruction of the Court to the jury is so stated that it will be properly understood. One of the defendant's pleas was that of payment. The jury were told that this plea was of a fact that must be proven to their satisfaction before the plea could be allowed, but that the fact might be established either by positive or presumptive evidence, that mere length of time, short of twenty years, would not raise such presumption, but that great length of time taken in connexion with other circumstances might be considered by the jury in determining whether the facts proven would raise the presumption of payment, that they might consider not only the length of time since the debt was made, but the condition of the parties, the necessities of the plaintiff, and the ability of the defendant to pay—their transactions with each other, and everything affecting their mutual relations which had been put in evidence, and from the whole

they must decide whether or not the proof was sufficient to sustain the plea."

His Honor does not think his addenda to be more than an extended explanation of the principle he is represented, by the bill of exceptions, to have charged; but it is more: it evolves an additional idea, and that is, that the great length of time which had elapsed from the creation of the debt to bringing the suit might be considered in connection with the other circumstances of the case, in determining whether there was a sufficient presumption of payment raised to anthorize them to so find.    We have no doubt but that the Judge did so charge, but as the fact is not certified to us in the bill of exceptions, to which, alone, we must, by law, look for the facts, we could not give either party the benefit of the point, as we have uniformly decided, if it could affect the judgment.    As it does not, we will consider the *addenda* of the presiding Judge as the charge actually given to the jury, and the one to which the plaintiff excepted.

The objections to the testimony of the witnesses, Barrett and Starnes, being founded on its relevancy, none other exist, depends upon that made to the charge.    If the charge was a proper one, the evidence was relevant.    Each points to the same things.    Was the solvency of the defendant from the time his liability began to the institution of the suit, a period of nineteen years and nine months, coupled with the embarrassed or insolvent condition of the plaintiff for a period of fourteen years preceding the suit, a circumstance from which the jury might presume payment?    That, the question made by the evidence as well as by the charge, they are therefore to be considered together as but one question.

1. Was the charge a proper one, under the circumstances? We think that it was.    Mere *lapse of time*, short of the period fixed, by the statute of limitation, as a bar to a suit on the particular cause of action, will not, of itself, raise a presumption of payment; but when other circumstances exist that have a tendency to raise the presumption, great lapse of time, between the accrual of the liability and the commencement of the suit, may, as in this case, very properly, be considered,

not as a circumstance of itself, but in connection with and in aid of the other circumstances of the case. At common law, a debt was presumed by the courts to be paid after the lapse of twenty years. No period short of that could be considered for that purpose unless there were other circumstances; then it might be, in connection with such other facts, and it will and ought to have a greater or less operation, as it is of greater or less extent. Winchelsea Causes, 4 Burr, 1962; Henderson vs. Lewis, 9 Sergeant & Rawle, 379.

2. The circumstances relied upon to raise the presumption were not only relevant and proper to be submitted to the jury, but unexplained, as they were, were altogether sufficient to create the presumption of payment. They were, first, the entire solvency and ability of the defendant during the whole time, a period only short of twenty years by less than three months, to pay the debt, in connection with the insolvency and embarrassment of the plaintiff for something more than fourteen years immediately preceding the commencement of the suit. During this time the plaintiff was pressed by judgments, and was forced to borrow, at different times, small sums of money from the defendant, for his present wants, for which he gave his due-bills. In addition to this, the defendant, during the time, having been compelled to pay off a judgment obtained against him, in favor of the Bank of Augusta, as endorser for the plaintiff, had had a settlement or accounting with the plaintiff on account of the money so paid out for him, and the plaintiff, in settlement of the debt so incurred, had given his and his mother's note, payable to a third person, Mr. Amos Whitehead, for the sum of $960, for the benefit of the defendant. This note had been sued to judgment by the defendant against its makers, and was at the trial open and unsatisfied. These circumstances are so strong that it is difficult to account for them on any other supposition than that the debt was paid. That one, greatly embarrassed should hold a debt for the large sum of $2,600 besides interest, on a solvent person living in the same city with himself, for a period of nineteen years, and during the time should have a settlement with the debtor and give to such

debtor, or rather to *a third person* for the debtor, his note *with security*, for the balance due by him to such creditor on account of money paid out by the debtor for him, is incredible. Yet such is the fact, if this debt has not been paid.

Whether the letter, written by the defendant to the plaintiff in reference to the transaction out of which the debt grew, explained or accounted for these circumstances, was a question entirely for the jury, and they by their verdict declared that it did not.

Let the judgment be affirmed.