## PHILMAN v. MARSHALL.

1. If upon the levy of a distress warrant one becomes a surety upon a replevy bond given by the defendant, in the trial of an issue joined on the affidavit to obtain such warrant a judgment may be entered up against the surety without notice to him; but where the levying officer, instead of taking a replevy bond in terms of the statute, conditioned for the payment of the eventual condemnation-money, takes a forthcoming bond, a summary judgment can not, as in cases of replevy bonds, be entered up against the surety.

2. If in such a case a judgment is entered in a summary way against the surety as if upon a replevy bond, he may, upon the levy of the execution against him, by affidavit of illegality, make the question that he had not signed such a replevy bond and that for this reason the judgment against him was unauthorized.

3. Where, upon the trial of an issue joined upon such an affidavit of illegality, it appears that the bond alleged to have been taken by the levying officer has been lost or destroyed, neither the principal nor the surety is, under section 5269 of the Civil Code, incompetent as a witness on behalf of the latter as to the character and conditions of the bond actually signed by him, even though at the time of the trial both the levying officer and the subscribing witness to the bond are dead.

4. As to facts knowledge of which an attorney acquires from his client by virtue either of his relation as attorney or of his anticipated employment as such, he is not a competent witness; otherwise as to communications made by his former client to him after the relation of attorney and client had ceased to exist.

Argued October 18, — Decided November 26, 1897.

Affidavit of illegality. Before Judge Butt. Taylor superior court. April term, 1897.

*R. D. Smith*, for plaintiff in error.

*Brannon, Hatcher & Martin*, contra.

SIMMONS, C. J. 1. It appears from the record that Marshall sued out a distress warrant against Wacter. Wacter gave a bond, with Philman and others as sureties. The case was returned to the superior court by the sheriff. Upon the trial in that court Marshall prevailed, and a judgment was entered up against Wacter and his sureties as upon a replevy bond, in the manner provided by law in cases where replevy bonds are given. Execution was issued upon this judgment and levied upon the property of Philman, one of the sureties. He filed an affidavit of illegality upon the ground, that he had never signed nor authorized any one else to sign for him a replevy

bond; that he was never served, and had no notice of the purpose and intention of the plaintiff to take judgment against him as surety; that he did not appear and defend, and had no notice or knowledge of the entering of the judgment against him until the levy of the execution. The contention of Philman, on the trial of the illegality, was that he had signed a forthcoming bond and not a replevy bond. Marshall contended that the bond signed was a replevy bond. There was some evidence to support each contention. When the sheriff levied the distress warrant, if he took a replevy bond as provided by law and returned it to the superior court, upon the trial of the case in that court, if the plaintiff in the distress warrant prevailed, it was his right to enter up a judgment not only against the principal but also against the sureties, without serving them or giving them any notice of the pendency of the suit. If, upon the other hand, the sheriff, when he levied the distress warrant, took a forthcoming bond, judgment could not be entered up thereon against the sureties in that proceeding, but it would have been necessary to have brought suit upon the breach of the bond by the failure to produce the property at the time and place of sale.

2. If the bond given was a forthcoming bond and not a replevy bond, the surety had the right to file an affidavit of illegality when the execution was levied upon his property, and to make the question that he had not signed a replevy bond and that for this reason the judgment against him was unauthorized.

3. It appears that the original bond taken by the sheriff had been lost or destroyed, and that a copy thereof had been established on motion of the plaintiff, without notice to the principal or sureties thereon. On the trial of the illegality, Wacter, the principal, and Philman, one of the sureties, testified that the bond signed by them was a forthcoming bond and not a replevy bond. This evidence was objected to by plaintiff, on the ground that these witnesses were incompetent to testify in the case, because the sheriff who took the bond and the magistrate who attested it were both dead. This objection was sustained by the court and the testimony excluded. We have

carefully scrutinized the act of 1889 and the amendments thereto, codified as section 5269 of the Civil Code, and find nothing in the exceptions thereto which will render these witnesses incompetent to testify on their own behalf as to the character and conditions of the bond actually signed by them, even though the sheriff who had taken the bond and the magistrate who had attested it were both dead. As none of the exceptions made in this section of the code applies to witnesses in a case like the one under consideration, we are compelled by the terms of the section itself to hold that the trial judge erred in excluding their testimony. If they were competent witnesses, the testimony sought to be given by them was relevant and admissible. If the sheriff who made the levy took, by mistake, a forthcoming bond instead of a replevy bond, the defendants were entitled to show by their testimony the nature and character of the bond which they actually signed. *Ham v. Parkerson*, 68 *Ga.* 830, and cases there cited.

4. It appears that O. M. Colbert was of counsel for the defendants in the trial of the distress warrant upon which the judgment was rendered against the principal and sureties on the alleged replevy bond. At the termination of this part of the case the employment of Colbert ceased. After this, Philman made to him certain admissions in regard to the character of the bond and his liability thereon. Colbert was introduced as a witness in the court below to testify as to these admissions. His testimony was objected to on the ground that he was incompetent to testify against his client, because of their relation as attorney and client. It appearing from his testimony that the relation of attorney and client had ceased with the termination of the case, that the facts to which he testified were learned after such termination of his employment as attorney, and neither by virtue of his employment as such nor of any anticipated employment, we think that he was a competent witness. In the case of *Chappell & Co.* v. *Smith*, 17 *Ga.* 68, this court held that "To make an attorney at law incompetent to testify of a fact, the knowledge of the fact must have been acquired by him, *both* during the relationship of client and attorney, and by reason of that relationship."

It further appears that R. D. Smith was employed as attorney by Philman. He was introduced by the plaintiff as a witness to testify against his client. He testified that he was the attorney of Philman; that at the termination of the case he took the papers in order to make a motion for a new trial; that he put the papers in his satchel and took them from Taylor superior court to Houston superior court; that while at the latter court his satchel, with the papers it contained, was stolen; that he had never been able to recover the papers; that in looking over the papers he acquired his knowledge of the facts of which he testified. His testimony was objected to on this ground, and the objection was overruled. This was clearly error. It does not appear whether Smith was engaged in the trial of the case which resulted in the verdict and judgment, or whether he was employed after the verdict to make the motion for a new trial. It does appear clearly, from his testimony, that the knowledge of the facts about which he testified was acquired by him while the relationship of client and attorney existed, and by reason of that relationship. Under the provisions of section 5271 of the Civil Code, no attorney shall be competent or compellable to testify for or against his client, to any matter or thing, knowledge of which he may have acquired from his client, by virtue of his relation as attorney. While Smith did not acquire knowledge of the facts in regard to which he testified from any communication made directly to him by his client, he did acquire it by reason of his employment as attorney. He acquired it by examining, as attorney, the papers connected with the case in which he was employed to make a motion for a new trial.

In the case of *Causey* v. *Wiley, Banks & Co.*, 27 *Ga.* 444, it was sought to prove the contents of certain interrogatories which had been sued out in the case, and which had been read on a former trial. One of the attorneys, introduced as a witness, testified that he had acquired his knowledge of the contents of the interrogatories during his relation as counsel to the cause and in consequence of that relation, and that but for the fact of his employment as counsel he did not think he would have paid attention to the reading of the interrogatories and answers. His testimony was objected to, and was rejected by the trial court;

and this court held that "Facts which came to the knowledge of a witness, by reason of his being connected with the case as attorney at law, can not, under the statute, be given in evidence by him." In the case of *Freeman* v. *Brewster*, 93 *Ga.* 648, an attorney had been employed to collect a life-insurance policy. He did collect it, and paid over the proceeds to his clients who were guardians of a minor. Subsequently suit was brought against the clients of this attorney for the recovery of this money. The attorney was introduced as a witness to prove the contents of the insurance policy, the identity of the beneficiaries therein, the collection of the money and the payment of the same to the guardians. It was objected that he was incompetent as a witness, because all the knowledge he had as to the matters to which he testified was obtained by reason of his employment as attorney. The trial judge admitted his testimony; and this court held : "The knowledge of an attorney at law of the contents of an insurance policy, the identity of the beneficiaries named therein, the collection of the money, and the payment of the same to his client, having been acquired while acting in his professional capacity under employment to collect the policy, and by reason of this relationship, he is an incompetent witness to testify to these facts, and it was error to admit his evidence." *Judgment reversed. All the Justices concurring.*