## TRUSTEES OF JESSE PARKER WILLIAMS HOSPITAL *et al. v.* NISBET; *et vice versa.*

Nos. 13556, 13558, MARCH 15, 1941.  REHEARING DENIED MARCH 28, 1941.

832

*Hirsch, Smith & Kilpatrick, D. F. McClatchey,* and *Lokey & Bowden,* for plaintiffs in error.

*Arnold, Gambrell & Arnold,* contra.

GRICE, Justice. ■ We deal first with the cross-bill of exceptions. It is insisted that the answers as amended make no issuable defense on the question of payment, discharge and satisfaction. Such a defense may be sustained by proof of circumstances, provided they be of such a nature as to justify the inference sought to be drawn therefrom. While perhaps one single circumstance would not be sufficient, a chain of them, made up of connected links, might. On the authority of *Milledge* v. *Gardner,* 33 *Ga.* 397, and *Norton* v. *Aiken,* 134 *Ga.* 21 (67 S. E. 425), the court correctly ruled that the amended answer set forth circumstances which could properly be considered by the jury on the question of payment, discharge, and satisfaction. See *Fletcher* v. *Young,* 10 *Ga. App.* 183 (73 S. E. 38) ; *Tumlin* v. .*Guest,* 31 *Ga. App.* 250 (120 S. E. 442) ; *George* v. *McCurdy,* 42 *Ga. App.* 614 (157 S. E. 219) ; *Hurt* v. *Stewart,* 49 *Ga. App.* 251 (174 S. E. 924).

■ Another ground of attack was that the answers as amended, in so far as they related to the charge of undue influence, consisted of conclusions unsupported by allegations of sufficient facts. The decisions in *Field* v. *Brantley,* 139 *Ga.* 437 (77 S. E. 559), and *Peavey* v. *Crawford,* 182 *Ga.* 782 (187 S. E. 13), are relied on. In the first of these two cases it was in the opinion pointed out that there was not even a distinct allegation that the will was obtained by undue influence, and no facts alleged constituting undue influence. In the latter case it was in the opinion said that the caveat amounted to nothing more than to allege that two daughters exerted constant and undue importunities, and thus forced the mother to sign the will in order to obtain quiet. The court declared that to importune one to make one the beneficiary is not necessarily the existence of undue influence. Both decisions recognize, however, the doctrine that when undue influence is charged, good pleading requires an averment of the facts relied on to sustain it. In the instant case the pleadings alleged that

Mrs. Williams was ill, weak, and mentally deficient; that there was great mental disparity between her and Nisbet; that there existed a confidential relationship between them; that there was gross inadequacy of consideration; and that John Lord Nisbet, to whom said paper was addressed, had acquired an excessive and undue influence over the said Mrs. Williams. He was attending to her business for her; had all of her business affairs in his hands; was seeing her constantly, purporting to do various things for her, and assuring her of her great dependence on him; and because of her weakened physical and mental condition he had acquired and exercised undue influence over her, as a result of all of which her signature was obtained. The answers as amended were not subject to the criticism herein referred to.

■ The answers as amended were demurred to on the further ground that they presented no issuable defense upon the question of Mrs. Williams' mental capacity to make a contract; the position being that, in the absence of an allegation that Mrs. Williams was without capacity to understand her acts, the allegation that she lacked sufficient mental capacity to make a valid contract or agreement is a mere conclusion. When it is sought to avoid a contract on grounds such as hereinbefore set forth, it is not necessary to allege an entire loss of capacity of understanding. The answer does allege that her mental and physical capacity were greatly impaired and weakened, and the complaint that the allegations with reference thereto are mere conclusions is without merit. Compare *Morris* v. *Mobley,* 171 *Ga.* 224 (155 S. E. 8).

■ The fourth ground of attack was that the answers as amended made no issuable defense upon the question of the invalidity of the paper, due to undue influence of Nisbet, the great disparity in mental capacity between Nisbet and Mrs. Williams, the confidential relation existing between them, and the gross inadequacy of consideration. The allegations of that part of the answers as amended set forth facts which if established would be sufficient to justify the avoidance of the instrument. *Maddox* v. *Simmons,* 31 *Ga.* 512, 530; *Frizzell* v *Reed,* 77 *Ga.* 724; *Stanley* v. *Stanley,* 179 *Ga.* 135 (175 S. E. 496); and other authorities cited and discussed in division 6 of this opinion.

■ While the evidence on the subject was conflicting, there was direct evidence from which the jury could have concluded that

at the time of the execution of the paper Mrs. Williams' mind was in a weakened condition, that she had every confidence in Nisbet, who was in charge of her business affairs, and that she largely relied on and trusted him. There was no direct evidence of undue influence. The defendants admitted a prima facie case, and assumed the burden. Did this require them to bring before the jury affirmative proof of undue influence? Or, if the jury were satisfied from the testimony that the elements next above mentioned were present, coupled with the fact that the subject-matter of the paper was a large gratuity, did a presumption arise that there was undue influence, and in that case does the burden rest upon Mrs. Nisbet to bring forward proof to show that the instrument was free from improper influence? If it be the law that when such a relationship of dominance of one party exists, it raises a presumption of undue influence, and throws upon the party asserting rights under the instrument the burden of establishing the fairness of the transaction, such rule is not inapplicable here on account of the fact that the defendants admitted a prima facie case and assumed the burden. The burden assumed by the defendants was to produce such evidence as would prima facie establish their defense. When they do that, the burden shifts, and at that point it becomes the burden of their adversary; and this is true notwithstanding the admission in their pleadings of a prima facie case and their original assumption of the burden. If they have introduced evidence of circumstances which under the law causes a presumption of undue influence to arise, the burden of going forward with the evidence shifted to the plaintiff. For an admirable discussion as to the law of this burden, see *Hawkins* v. *Davie,* 136 *Ga.* 550 (71 S. E. 873); *Strickland* v. *Davis,* 184 *Ga.* 76, 80 (190 S. E. 586).

■ The rule that a presumption of undue influence arises, so as to cast on the grantee the burden of showing its absence, in those cases where the parties sustained a confidential relationship, the grantor being of weak mentality, and the party reaping the benefit occupying a dominant position, has been often recognized by the courts and applied to various relationships, including that of confidential adviser. In Woodbury *v.* Woodbury, 141 Mass. 329 (5 N. E. 275, 55 Am. R. 479), where an intestate, before her death, gave to the defendant certain sums of money, and the evidence

tended to show that before and at the time of the gift the intestate was of a feeble mental condition and of advanced age, that the defendant, who was not a relative of the intestate, was her physician, friend, adviser, judicial agent, and managed her affairs, having a considerable influence over her, it was ruled that the evidence raised such a presumption of fact that, if believed by the jury, it would justify a finding that the defendant in some form solicited the gift, and used undue influence to obtain it. In Eldridge *v.* May, 129 Maine, 112 (150 Atl. 378), it was held that when relations of reciprocal confidence exist between brothers and sisters, and the burden on one of proving fairness of beneficial transaction is not sustained, equity sets the transaction aside. In the opinion many authorities are cited to sustain the statement that whenever a fiduciary or confidential relation exists between the parties to a deed, gift, contract or the like, the law implies a condition of superiority held by one of the parties over the other, so that in every transaction between them, by which the superior party obtains a possible benefit, equity raises a presumption of undue influence, and casts upon that party the burden of proof to show affirmatively his compliance with equitable requisites and of entire fairness on his part and freedom of the other from undue influence. In Pomeroy's Eq. Jur. § 956, it is said that the term "fiduciary or confidential relation," as used in the law relative to undue influence, is a very broad one, and embraces both technical fiduciary relations and those informal relations which exist whenever one man trusts in and relies upon another, and that the relations and duties involved in it need not be legal, but may be moral, social, domestic, or merely personal. In Shackelford *v.* Shackelford, 144 Ark. 365 (223 S. W. 561), it was applied to the case of a parent who took a deed from his child soon after the child reached majority, and while living under the parent's roof; the court holding that the parent had the burden of clearing the transaction of every suspicion and establishing its fairness and good faith. In Thomas *v.* Whitney, 186 Ill. 225, 57 N. E. 808, the Supreme Court applied the rule in a case where an old and feeble man became an inmate of the defendant's family, the opinion containing the statement that "Certain transactions are presumed, on grounds of public policy, to be the result of undue influence. Such transactions are generally those occurring between persons in some relation of confi-

dence one towards another." The court added that the presence of such relationship creates the presumption of such influence, which may be rebutted by proof.

A case somewhat similar on its facts is Zimmerman *v*. Bitner, 79 Md. 115 (28 Atl. 820), where the rule as to the burden of proof is stated when the transaction is under attack. In 5 Williston on Contracts (rev. ed.), 4542-4545, § 1625A, many authorities are collected in support of the rule therein stated as follows: "In the absence of a relationship between the parties to a transaction which tends to give one dominance over the other, undue influence must generally be proved by the party setting it up, and will not be presumed. Under such circumstances inadequacy of consideration, although highly material to the issue, usually will not alone constitute such proof, nor will the age, infirmity, or weakmindedness of the promisor or transferor of itself establish a case of defense based thereon. When such a relationship of dominance of one party exists, however, as is ordinarily the case where there is a fiduciary or confidential relation between the parties, the courts of equity hold that it raises a presumption of undue influence and throws upon the dominant party the burden of establishing the fairness of the transaction and that it was the free act of the other party. This principle has been generally applied to cases of settlements of property, especially gifts, rather than to contracts, but does not seem confined to such cases. It is applied where a child obtains a conveyance from an aged parent by means of an agreement to support. So an advantage obtained by a husband from a wife, or by one who stands in the position of a trustee from his cestui que trust, a guardian from a ward, whether legal guardianship exists or not, or by an attorney from a client, an administrator from a legatee, a physician from a patient, a pastor from a parishioner, a director or officer from his corporation, or as between affianced persons, is subject to the same rule. Indeed this doctrine is applicable to any situation where influence was acquired or confidence reposed in fact, whether the basis of the relation is moral, social, domestic, or merely personal." The correctness of the rule was recognized in *Causey* v. *Wiley,* 27 *Ga.* 444, where Judge McDonald said: "The learned chancellor seems to have laid down the sound rule, and the only rule which can protect, effectually, weak men from the machinations of artful men of superior mind,

viz.: that upon proof of weak mind, and that the instrument was executed without consideration, or was improvident or profuse, fraud would be inferred, and to rebut it proof must be made that it was the voluntary act of the party himself, unmoved by the words or conduct of the party taking the benefit under it." In *Maddox* v. *Simmons,* 31 *Ga.* 512, 530, it was observed: "It is proper to add, that in cases where imbecility of mind and inadequacy of consideration unite, though neither standing alone is sufficient, under ordinary circumstances, to invalidate a contract, the court has granted relief, without other evidences of imposition; and especially is this the case where imbecility of mind and inadequacy of consideration is united with an abuse of confidence which the one party reposed in the other. Clarkson *v.* Hannay, 2 Pierre Wms. 204; Gibson *v.* Jeyes, 6 Ves. 266; Crow *v.* Ballard, 1 Ves. Jr., 215; Mortleck *v.* Buller, 10 Ves. 292; Dealty's Heirs *v.* Murphey, 3 H. K. Marshall's Rep. 475; Whelan *v.* Whelan, 3 Cowen, 537; Whipple *v.* McClure, 2 Root, 216; Per. Harris, P.J., in Dunn *v.* Chambers, 4 Barb. 379."

In *Frizzell* v. *Reed,* 77 *Ga.* 724, 729, we find the following: "The main ground is that the verdict is contrary to the law and evidence in the case; and this ground reaches the entire case made by the pleading and evidence. The evidence of ten witnesses for plaintiff was to the effect that she was insane; on the contrary, the testimony of forty-four witnesses was that she was not insane. But it is quite clear, from the testimony of all, that she was greatly afflicted in body and mind from disease; that she had little or no will power; and that she was greatly under the influence of defendant. So that, under these circumstances, where one possessed of this power over another obtains a conveyance of the property of such person, it should be made to appear that the transaction was fair, honest, and free from fraud or all undue or improper influence of the master mind; such a transaction will be scrutinized closely by the courts; if there be found the slightest scintilla of fraud, the transaction will be set aside. These circumstances, when shown, without more, will of themselves show fraud which will authorize a court of equity to act and set the contract aside." *Hubbard* v. *Rutherford,* 148 *Ga.* 238 (96 S. E. 327), was a case where no confidential or fiduciary relation existed between the grantee and grantor, and therefore the court held that it was erroneous to

charge the jury that in a proceeding to set aside a conveyance for undue influence it should be made to appear, in order to sustain such conveyance, that the transaction was fair, honest, and free from undue influence; the court at the same time holding that the rule announced in *Frizzell* v. *Reed,* supra, and other like cases, "is applicable: (1) where the parties to the deed stand in a fiduciary or confidential relation the one to the other; (2) where badges of fraud are shown, coupled with prima facie evidence of the mental weakness of the grantor, his susceptibility to influence, or other like circumstance." A case that appears to be in point is *Stanley* v. *Stanley,* 179 *Ga.* 135 (supra), where it was ruled: "Under one phase of the evidence, the jury could have found that while the grantor was not wholly incapable of entering into such a contract, he was yet possessed of little or no will power, being afflicted both in body and in mind, and was greatly under the influence of the nephew to whom the deed was executed, and that the deed was 'improvident or profuse.' In these circumstances, an inference of fraud could have been drawn by the jury, and the evidence for the defendant grantee not being such as to rebut the inference as a matter of law, the court was authorized to charge the jury upon the subject of fraud. Civil Code (1910), §§ 4626, 4630; *Causey* v. *Wiley,* 27 *Ga.* 444 (3) ; *Woodruff* v. *Wilkinson,* 73 *Ga.* 115 (3) ; *Orton* v. *Madden,* 75 *Ga.* 83; *Frizzell* v. *Reed,* 77 *Ga.* 724."

Our conclusion is that the request to charge, the refusal of which is complained of in ground 29 of the motion, stated a sound proposition of law, to wit: "If you find from the proof that Mrs. Cora B. Williams at the time she executed the contract on which suit is brought was of weak mind, and that John Lord Nisbet, the beneficiary of the contract, stood in a confidential relation to her and possessed great influence over her, then the burden of proof would shift to the plaintiff in this case to prove that the contract was not the result of the exercise of undue influence, and in the absence of such proof on the part of the plaintiff you would be authorized to find that the contract was not enforceable." Was it applicable? It was, because it was in proof that Mrs. Williams' mind was affected by her illness, and the narcotics which were administered to her, as a result of which her mind did not properly function, that she was very weak and "doping;" that she was not normal, was not herself; that she did not seem to know what was going on

around her; that her mental condition was subnormal; that she was mentally unbalanced. As to the relationship between Mrs. Williams and Nisbet, it was in proof that the relation was quite intimate; that she relied on him and trusted him to a large extent; that he was in charge of her affairs, and she relied on him absolutely in every instance. It was also in proof that he seemed to have charge of everything; that he was very affectionate towards her; that every time he got around her he would go up and kiss her on the forehead; that he was very attentive to her. A witness testified that "I have seen her sign papers that he brought in to her to sign. He would just ask her to sign the papers, and she would sign them. The papers were not read to her." The evidence as to her mental condition was in conflict, and of course we do not mean to rule that what is summarized next above is the truth of the case, for that is the province of the jury, not ours; but when a party makes a timely request to charge based on a theory that is supported by the evidence, it may not be refused merely because the evidence is in conflict. It should be further said in this connection that the instrument under attack was a gratuity, the principal of which amounts to more than two hundred thousand dollars. Grounds 9 and 20 of the motion are meritorious, because the court charged the jury in effect that the burden of proof would shift to the plaintiff if they should find from the proof that Nisbet exercised great influence over her "about this matter," the court thereby eliminating from the consideration of the jury the proposition that without proof that he exercised influence over her "about this matter," such might be presumed from other facts. For a like reason grounds 8, 14, 15, 16, 25, 26, 28, 29, 33, and 37 of the motion were meritorious.

■ With reference to ground 4, which is set forth in the statement preceding this opinion: One of the defenses pleaded was that the obligation sued upon had been paid, satisfied, and discharged. Great delay in asserting a claim is a circumstance to be considered by the jury in support of a defense that such claim has been discharged, although the claim may be asserted within the period of the statute of limitations. That this circumstance is a relevant matter to be considered by the jury in support of such a defense, see *Milledge* v. *Gardner, Norton* v. *Aiken, Hurt* v. *Stewart, Calhoun* v. *Williams, George* v. *McCurdy, Tumlin* v. *Guest, Fletcher*

v. *Young,* supra; *Conway* v. *Caswell,* 121 *Ga.* 254, 259 (48 S. E. 956, 2 Ann. Cas. 269); *Gamble* v. *Burney,* 169 *Ga.* 830, 832 (152 S. E. 73). There was no contention by defendants at the trial that this suit was barred by the statute of limitations, or that the plaintiff was legally barred from her claim because the claim was not filed with the executor before he had completed disbursement of the estate's assets; or that the plaintiff was legally barred because the executor had recited in his final returns to the ordinary that all debts of the estate had been paid, or because the executor had turned over the property of the estate to the Trustees. Therefore to single out in the charge each of these separate independent facts, with the statement that they were not sufficient as defenses, not only was calculated to confuse the jury as to what the contentions of the defendants were, but, more importantly, this statement tended to minimize, belittle, and destroy the effect of the evidence in support of the defense of payment and discharge. The language in the charge complained of here tended to impress upon the jury that the court considered such evidence as of little or no importance in the defense of the case. This court has frequently condemned such charges as these. In *Southwestern Railroad* v. *Papot,* 67 *Ga.* 675, the trial court charged as follows: "A statement made by the president of the Southwestern Railroad Company in a letter written by him to Ketchum & Hartridge to the effect that 'Shorter, Papot & Co. had agreed to pay interest,' does not of itself prove that Shorter, Papot & Co. had so agreed. The statement alone in such a letter is not sufficient proof that Shorter, Papot & Co. had agreed to pay interest. In this, as in all other matters, you should look to the whole evidence of the case." As to this charge the Supreme Court said: "This charge, we think, was error. The letter of W. S. Holt, president, in which the statement appeared and on which the court instructed the jury, was legal and competent evidence, as ruled when this case was before this court heretofore, . . and the effect and weight of that letter as evidence was a question for the jury, and not for the court. . . It was an important link in the chain of testimony produced by the defendants to sustain their answer. To single this out and express an opinion upon its weight and effect, was error."

This statement of the court applies with force to the instant case, inasmuch as the court below abstracted certain elements of

the testimony from the whole, and charged upon the weight and effect of such particular elements. These elements, in the words of the court quoted above, were "important links in the chain of testimony produced by the defendants to sustain their answer." To single these elements out, as the court did, and express an opinion upon their weight, was, we think, prejudicial error. In *McCrea.* v. *Georgia Power Co.,* 179 *Ga.* 1 (7) (174 S. E. 798), it was said: "A request to charge is properly refused which singles out particular facts bearing upon the issue to be tried, and seeks to belittle or destroy their weight and probative value when considered alone, when such facts, if taken in connection with the other evidence in the case, tend to establish the issue." The request to charge which was properly refused there was one that an entry upon land merely for the purpose of making a survey would not amount to either open, notorious, or continuous possession; and another erroneous request to charge was that mere entries upon land, although at frequent intervals, by an agent of one claiming the land under paper title, for the purpose of showing it to prospective investors, would not be such adverse possession as the law requires in order to make a good title by prescription. Referring to these requests, which the court held were properly refused, it was said: "While the facts referred to in each of these requests to charge would not, alone and of themselves, be sufficient to show such adverse possession as to be the foundation of a good title by prescription, . . they were admissible in evidence to be considered by the jury, along with all of the other evidence in the case, in determining that question. Each of these requests sought instructions by the court as to the probative value and effect of separate and independent facts, considered alone and by themselves, in determining the question of possession sought to be proved by the defendant. The court properly refused these requests, for the reason that it is improper to single out particular facts which bear upon the issue to be tried, and seek to belittle or destroy their weight and value, when such facts, if taken along with the other evidence in the case, might tend to establish the contention of the party offering such evidence." See *Flowers* v. *Flowers,* 92 *Ga.* 688 (3), 691 (18 S. E. 1006); *Georgia Railway & Power Co.* v. *Head,* 155 *Ga.* 337 (3, 6) (116 S. E. 620). The criticism of the charge, which is in this respect well founded, applies also to grounds 5, 6, 7 and 18 of the motion. On application of the above principles, ground 34 is without merit.

■ In several grounds of the motion complaint is made that the court charged the jury that "The influence which will invalidate a contract is such fraudulent practices upon the maker's fears, affections, and sympathies as entirely substitutes the will of another for the wishes of the maker of the instrument." It has been held that fraud and undue influence are not equivalent terms; undue influence may be a species of fraud, or it may exist without any positive fraud. *DeNieff* v. *Howell,* 138 *Ga.* 248, 252 (75 S. E. 202). It has also been ruled that undue influence is such influence as amounts *either* to deception or to force and coercion, thereby destroying free agency. *Cook* v. *Washington,* 166 *Ga.* 329, 348 (143 S. E. 409). In the case under review, the jury were correctly charged that "To constitute undue influence it is not necessarily required that there should exist moral turpitude or even an improper motive; but if a person from the best of motives, having obtained a dominant influence over the mind of the grantor, thereby induces her to make a contract which she would not have made otherwise, exercising the influence to the extent that the mind and will of the grantor is effaced or supplanted in the transaction, as that the instrument, while professing to be the act and deed of the grantor, in fact only expresses the will and mind of the other person," such would constitute undue influence; but for reasons pointed out in division 6 of this opinion, movants were not given the benefit they were entitled to from this definition of undue influence, because the court, immediately after the quoted extract, added, "if those facts are proven, if you find them to have been proven." The criticism of the charge which forms the basis of ground 10 of the motion is well founded.

■ There is an exception to the following charge of the court: "Now gentlemen, if you should find for the plaintiff, and which could only be done if you find against both of the contentions of the defendants, the form of your verdict would be: We, the jury, find for the plaintiff, Mrs. Idella Holloway Nisbet in the sum of $210,000, together with seven per cent. interest upon the several installments from the respective maturity dates of each, *to be recovered and paid only out of the trust funds.* If your verdict should be for the plaintiff, that would be the form." The contention is "that the defendants were not liable for interest at all; further, that if liability for any amount in the nature of interest

should exist, it would not exist for the period from the defendants' receipt of the money from Nisbet, as executor, up until the time of the plaintiff's demand upon them; further, that if they are liable for anything beyond the principal, such liability would in no event be, as a matter of law, for a fixed seven per cent. interest, but only for the amount actually earned by the portion of the funds and property to which the plaintiff was entitled." If the charge excepted to authorized an unpaid creditor, in order to satisfy his debt, to recover *from the residuary legatee* statutory interest *on the funds* of the estate paid the legatee by the executor from the time they were received, it would no doubt be erroneous. A donee of trust funds, without notice of the trust or of a valid claim thereon, is not generally liable for interest thereon except as to such as might have been actually received, until he receives notice and demand for restitution or payment. The authorities cited by plaintiffs in error seem to hold this and nothing more. 2 Scott on Trusts 1614, 1617; 4 Bogert on Trusts, 2525, 2530; 2 Restatement of the Law of Trusts, 890, § 292; Restatement of the Law of Restitution, 618, 621, 622. This is true, not because interest is "of purely statutory origin and not the creature of the common law" and "should not be awarded except in such cases as fall within the terms of the statute unless it has been contracted for either expressly or impliedly" (*Best* v. *Maddox,* 185 *Ga.* 78, 82, 194 S. E. 578; *Southern Cotton-Oil Co.* v. *Raines,* 171 *Ga.* 154 (10), 155 S. E. 484), but for the reason that the claim is considered as one due only on notice and demand upon the donee, and on such claim interest runs only from demand. Code, § 57-107. Except for this, the claim being liquidated, it would draw interest. § 57-110. "The general rule is that on money paid by mistake, when there is no fraud or misconduct by the party receiving it, interest does not run until after demand. Prior to demand by suit or otherwise, the receiver is in no default." *Georgia Railroad & Banking Co.* v. *Smith,* 83 *Ga.* 626 (5) (10 S. E. 235); Code, § 57-107. See *Anderson* v. *State,* 2 *Ga.* 370; *Adams* v. *Johnston,* 39 *Ga.* 479. Such, however, is not the present case. The action does not seek and the charge does not direct the jury to assess *the defendants* with interest *on the funds* of the estate distributed to them. The plaintiff held, as assignee, a written obligation of Mrs. Williams for the payment of *definite sums of money,* and she sued

the residuary legatees, not attempting under a claim of title to recover the funds of the estate or any part thereof with interest *thereon*, but merely seeking satisfaction of both principal and *interest of her debt* against Mrs. Williams out of those funds.

So the charge of the court was merely to the effect that the sums agreed to be paid under the written instrument executed by Mrs. Williams drew interest from their respective due dates, and that as to such amounts the plaintiff was entitled to subject the funds of the estate (not themselves enhanced by interest). There was no question made by the defendants in the record that the amount actually received by them was not ample to cover these amounts. It in fact appears that they received from the executor an amount greatly in excess thereof. Nor were there any equities set up by them as to why less than the amount received should be available for application to a debt of an unpaid creditor of the testatrix. As has already been made to appear, the plaintiff's claim was based on a written instrument for the payment of definite sums of money in installments, and clearly enough they were liquidated demands which, as against Mrs. Williams and her estate, would draw interest. Code, § 57-110. Cf. *Clark* v. *Georgia R. Bank &c. Co.,* 182 *Ga.* 472 (185 S. E. 716). "A creditor of an estate may follow assets in the hands of legatees or distributees, though they receive them without notice." Code, §§ 108-425, 113-1506; *Caldwell* v. *Montgomery,* 8 *Ga.* 106; *Jones* v. *Parker,* 55 *Ga.* 11; *Moore* v. *Smith,* 121 *Ga.* 479 (49 S. E. 601); *Morrison* v. *Fidelity & Deposit Co.,* 150 *Ga.* 54 (102 S. E. 354); *McNair* v. *Rabun,* 159 *Ga.* 401 (126 S. E. 9); *Wilson* v. *Aldenderfer,* 183 *Ga.* 760 (189 S. E. 907). The creditor's right in this connection is to have the assets of the estate in the hands of the legatee applied in satisfaction of his *debt,* if they be sufficient for that purpose (and here we have no question of the sufficiency of the assets of the estate in the hands of the defendants). His debt where liquidated consists of interest as well as principal. Cf. *Park* v. *Candler,* 114 *Ga.* 466 (40 S. E. 523). As a general rule in a case of this character, as regards the establishment of the debt due by the estate, the defendant legatees stand in the place of the executor. Thus the action is not governed by the limitations in reference to actions for money had and received or unjust enrichment, but by the limitations to actions on the character of the claim against the estate. *Trustees of Jesse Parker*

*Williams Hospital* v. *Nisbet,* 189 *Ga.* 807 (supra); *Caldwell* v.
*Montgomery,* supra; *Morrison* v. *Fidelity & Deposit Co.,* supra;
*Moore* v. *Smith,* 121 *Ga.* 479, 481 (supra).  So, too, the debt for
which the defendant legatee is liable up to the amount of assets re-
ceived by him should, as a general rule, be governed by the amount
for which the executor would be liable.  This of course would in-
clude both principal and interest.  It may be true that there has
been a delay in presentation of the claim, and that if the defendant
legatees had been earlier notified of the debt they would have paid
it rather than let it continue to draw interest.  This does not, how-
ever, in our opinion constitute an equitable reason why the whole
interest should not be paid.  The penalty under the statute for
delay in presentation of claims against an estate is loss of priority,
not of loss of any part of the debt, principal or interest.  Code, §
113-1505.  Our view is that the defendant legatees took the funds
of the estate subject to any charge of debts so long as it remained
in their hands and to its full extent.  The liability for the debt
due to the plaintiff, including interest, is assessed against the
residuary estate, and not against the legatees.  The tracing of the
assets into the hands of the trustees is done in a case like this
merely to subject them to such payment, not to restore them to
their owner as a claimant, nor to assert liability against the
trustees in whose custody they are found.  Thus the estate right-
fully held by them is merely reduced by the full amount of the
debt, the only difference being that the reduction comes about after
it comes into their hands by delivery from the executor.  The
plaintiff was a creditor of the estate as to interest as well as to
principal.  The assignment of error on the charge is accordingly
held without merit.

What has been said in this division of the opinion was prepared
through collaboration of the other members of the court.  With-
out committing himself to all that is contained therein, the writer,
though entertaining grave doubts as to the conclusion reached as
to this ground of the motion, concurs in the ruling that under the
facts of this case the charge complained of was not erroneous.

The remaining grounds of the motion are dealt with
in the headnotes.

*Judgment reversed on the main bill of exceptions; affirmed on
the cross-bill.   All the Justices concur.*