26811.   PERKINS et al. v. EDWARDS.

ARGUED OCTOBER 12, 1971—DECIDED NOVEMBER 5, 1971—
REHEARING DENIED DECEMBER 17, 1971.

*Myers & Parks, John R. Parks, J. Frank Myers, Thad Crawley,* for appellants.

*Byrd, Groover & Buford, Denmark Groover, Jr., Dan S. Beeland,* for appellee.

NICHOLS, Justice. ■ The trial court permitted the testimony of one of the attesting witnessing given at the hearing in the court of ordinary to be read to the jury over objection that the witness was not shown to be "inaccessible" throughout the entire trial.

A physician testified that on the morning the trial began the witness was suffering from pharyngitis in her inner ear, an infection which resulted in a very slight hoarseness, sore throat, and nausea and vomiting, that it would be detrimental to her health for her to appear in court that day and that she was not physically able to do so. On cross examination the physician testified that he did not know when the witness would be able to come into court and testify but that it could be anywhere from 24 hours to two or three days before the condition settled down.

It is well settled that the question of the admission of testimony from a former trial under such circumstances is a matter in the sound discretion of the trial court and such discretion will not be overturned unless a manifest abuse of discretion is made to appear. See *Atlanta & Charlotte A.-L. R. Co. v. Gravitt,* 93 Ga. 369 (20 SE 550, 26 LRA 553, 44 ASR 145); *Estill v. Citizens & Southern Bank,* 153 Ga. 618, 624 (113 SE 552).

At the time the trial court exercised the discretion lodged in it as to permitting the former testimony to be read it was the afternoon of the day the physician testified as to the witness' health. The trial court did not err in permitting the testimony from the former trial to be read where

the issue on both trials was the same, to wit: the validity of the will sought to be probated.

Nor was there any error in permitting such former testimony to be read where the witness referred to an exhibit shown to her on the hearing in the court of ordinary and referred to by both counsel at the time of the original trial in the court of ordinary as "the will" where this was the only will involved and the caveat was based upon undue influence and subsequent express revocations of such will. Had there been another document referred to in such testimony the caveators would have been authorized to submit such document upon the trial under review. Compare *Bloodworth v. State,* 161 Ga. 332 (6) (131 SE 80). Accordingly, the 5th and 6th enumerations of error are without merit.

■ The 14th enumeration of error complains that the trial court abused its discretion in refusing to permit counsel for the caveators to ask leading questions of one of their witnesses on direct examination. This witness had given an answer which was unexpected and damaging to the contentions of the caveators. Counsel for the caveators sought by leading questions to secure a different answer and after objection by propounder's counsel, the court refused to permit such leading questions.

"Leading questions are generally allowed only in cross examination; but the court may exercise a discretion in granting the right to the party calling the witness, and in refusing it to the opposite party, when, from the conduct of the witness or other reason, justice shall require it." *Code* § 38-1706. The mere fact that an unfavorable answer was given by the witness would not demand that counsel be allowed to ask leading questions of such witness so that a refusal to permit such questions would be an abuse of discretion.

■ The 15th and 18th enumerations of error complain of alleged misconduct on the part of the trial judge during the progress of the trial. No objection to any such alleged misconduct was made during the trial and such question can-

not be raised for the first time after an adverse jury verdict. See *Pulliam v. State,* 196 Ga. 782, 789 (28 SE2d 139).

■ The 16th and 17th enumerations of error relate to a hypothetical question asked a physician by counsel for the propounders. The only objection made to such question on the trial was "I will object to that question as stated, that he couldn't possibly know the answer to that question."

This objection was too general to present any question for decision by this court. In *Legg v. Legg,* 165 Ga. 314 (140 SE 868), it was held that an objection was too general where it merely recited that the testimony was "clearly improper and inadmissible." In *Andrews v. State,* 118 Ga. 1, 3 (43 SE 852), it was held: "In a sense all evidence is prima facie admissible, and the burden is upon the objecting party to state at the time some reason why it should not be admitted. It will not be sufficient for him to say, 'I object,' or 'I object because the evidence is not competent' or 'is inadmissible.' The attention of the court must be called to the specific ground of objection at the time the evidence is offered, and a failure so to do will be considered as a waiver." If the basis of such objection was that certain of the facts stated in the hypothetical question were not supported by evidence, then such defect should have been brought to the attention of the trial court when the objection was made. Compare *G. Bernd Co. v. Rahn,* 94 Ga. App. 713, 723 (96 SE2d 185).

■ The 7th and 8th enumerations of error complain of the court's instructions with respect to undue influence insofar as such charges relate to the two revocations signed by the deceased on April 26, 1967 and May 20, 1968. No contention is made that such excerpts from the charge were inaccurate statements of the law, but it is contended that the evidence was insufficient to support a charge on undue influence as to either revocation. This issue will be dealt with in the 7th division of the opinion as to the revocation dated April 26, 1967. As to the revocation dated May 20, 1968, the court did not expressly charge that the jury should con-

sider whether it was procured by undue influence, but limited such charge as follows: "I charge you in reference to the instrument dated May 20, 1968, that you will consider this instrument and decide whether it is a revocation of the will of September 28, 1966. To be a revocation, it is necessary that you find it complied with all of the requirements generally required of a will, among which is that the testatrix must have mental capacity to understand the nature of the instrument and must act freely and voluntarily and the same must be executed and witnessed with the same solemnity required of the will." Accordingly, enumeration of error number 8 is without merit.

■ The 9th through 13th enumerations of error complain of the refusal of the trial court to give in charge to the jury certain requests to charge submitted by the caveators.

Each request has been carefully examined and compared with the charge given the jury by the trial court. Each request to charge was either given in substance to the jury or was not correct as a matter of law or was argumentative. No reversible error appears as to any of these enumerations of error.

■ The evidence adduced upon the trial showed that at the time the will sought to be probated was executed an attorney was called to the home of the testatrix for the purpose of preparing a will and a thorough discussion was had as to her desires. A will in accordance with these desires was prepared by the attorney, that in view of her advanced age, the attorney (as was his custom when preparing documents for elderly persons) had her physician examine her to determine mental capacity, and that a nurse and a merchant in town witnessed such will. Each witness, as well as the physician and attorney involved in the transaction, testified as to her mental capacity to execute such will and, in fact, there is no real dispute as to her mental capacity at such time. The real contention of the caveators as to this issue relates to undue influence by the sole beneficiary under the will who was not her blood kin but the nephew and business partner of her deceased husband.

Under the cases relied upon by the caveators in support of their position that mere opportunity to exert undue influence is insufficient to invalidate the revocation of a will (see *Kellar v. Edwards,* 214 Ga. 633, 634 (106 SE2d 787); *Crews v. Crews,* 219 Ga. 459 (134 SE2d 27) and citations), the mere opportunity to exert undue influence by the propounder was not sufficient to invalidate the will sought to be propounded.

As to the first alleged revocation in point of time, the evidence disclosed that the document was prepared by one of the caveators and witnessed by such caveatrix as well as another caveatrix at a time when the testatrix had suffered from a second stroke and at a time when the mental capacity of the testatrix had diminished to the point that she could only be described as having testamentary capacity at rare intervals. The revocation was admittedly prepared a number of days before it was signed and at a time when the testatrix was in constant association with the scrivener of such revocation.

Pretermitting the question of whether devises in a will sought to be republished by this revocation would be void as to the witnesses to such revocation and republication, the scrivener and witnesses were beneficiaries under the purported republished will.

Under such circumstances the following provision of *Code* § 113-305 would of necessity apply: "In all cases, a knowledge of the contents of the paper by the testator shall be necessary to its validity, but usually, where a testator can read and write, his signature, or the acknowledgment of his signature, shall be sufficient. If, however, the scrivener or his immediate relations are large beneficiaries under the will, greater proof shall be necessary to show a knowledge of the contents by the testator."

"An attack on a will as having been obtained by undue influence may be supported by a wide range of testimony, since such influence can seldom be shown except by circumstantial evidence. Thus, a confidential relation between the parties, the reasonableness or unreasonableness of the dis-

position of the testator's estate, old age, or disease affecting the strength of the mind, tending to support any other direct testimony or any other proved fact or circumstance going to show the exercise of undue influence on the mind and will of the testator, are relevant. While the quantity of influence varies with the circumstances of each case, according to the relations existing between the parties and the strength or weakness of mind of the testator, the amount of influence necessary to dominate a mind impaired by age or disease may be decidedly less than that required to control a strong mind. *Dean v. Littleton,* 161 Ga. 651 (4) 654 (131 SE 507); *Stephens v. Bonner,* 174 Ga. 128 (162 SE 383); *Evans v. Arnold,* 52 Ga. 169 (4), 182; *Walker v. Roberts,* 20 Ga. 15, 25; *Smith v. Smith,* 75 Ga. 477 (4); *Davis v. Frederick,* 155 Ga. 809 (5-7) (118 SE 206); *Peretzman v. Simon,* 185 Ga. 681 (196 SE 471); *Griffin v. Barrett,* 185 Ga. 443 (195 SE 746); *Gaither v. Gaither,* 20 Ga. 709, 721; *Code,* § 37-706; *Trustees of Jesse Parker Williams Hospital v. Nisbet,* 191 Ga. 821 (14 SE2d 64)." *Fowler v. Fowler,* 197 Ga. 53 (2) (28 SE2d 458).

Prior to the execution of the will sought to be probated the testatrix had executed at least one other will and a codicil thereto. Both of these instruments were prepared by an attorney. The scrivener of the purported republication of such will and codicil was a niece of the testatrix. The original will referred to in the republication left the home, its contents, other personal effects, etc., and an amount of money to be divided equally between ten relatives of the testatrix or between as many of them as survived her. The scrivener of the republication was one of these named relatives. Approximately two years later the testatrix executed a codicil to such will in which she left her home, its contents and the other personal property referred to in the original will to the scrivener of the republication and provided that the amount of money referred to in the original will should be divided equally between the relatives referred to in the original will, as well as including in such division an additional relative.

The transcript of the evidence adduced upon the trial makes it clear that the scrivener of the republication was present when the first will was discussed by the testatrix with her attorney and it is also known, without dispute, that she was present when the codicil was discussed by the testatrix with her attorney. She knew of the contents of the original will, the codicil and the later will which was sought to be probated. At the time the original will and the codicil were executed, she saw her aunt, the testatrix, for only short periods of time inasmuch as she was working in Washington, D. C., but even so the testatrix told her everything about her personal business.

This evidence did more than show an opportunity to exert undue influence upon the testatrix and was circumstantial evidence of her using her confidential relationship to exert undue influence upon her aunt to change the original will so as to treat her differently from the other nieces and nephews named in such will, by leaving this niece her home and other personalty that had been left under the original will to all of them equally. The evidence authorized the charge as to undue influence as to this revocation of the will sought to be probated, which revocation also sought to republish the will leaving the scrivener of such republication a large portion of the testatrix' property.

The evidence as to the second alleged revocation showed that the document was prepared by an attorney at the request of two nieces of the testatrix. While one of the nieces testified that the testatrix requested that such document be prepared (the other niece predeceased the testatrix), there was no evidence as to when, to whom, or how such request was made by the testatrix. The evidence as to the execution of such document, at a time when the mental condition of the testatrix had deteriorated even beyond the condition when the first revocation was signed, did not show without contradiction that the testatrix knew what she was signing. One of the witnesses stated that the testatrix referred to it as a power of attorney needed so that she (one of her nieces) could get some things for her at the nursing home

where she was a patient at that time.

The evidence authorized the verdict, and the trial court did not err in overruling the caveators' motions for directed verdict, judgment non obstante veredicto and motion for new trial, or in entering judgment on the verdict all as enumerated as error in the first four enumerations of error.

*Judgment affirmed. All the Justices concur.*