A. F. CONNER AND SONS, INC., et al., Petitioners,

v.

TRI–COUNTY WATER SUPPLY CORPORATION, Respondent.

No. B–6343.

Supreme Court of Texas.

Jan. 18, 1978.

Rehearing Denied March 1, 1978.

Haley, Fulbright, Winniford, Bice & Davis, John W. Fulbright, Wilson, Olson, Stem & Farr, Lyndon L. Olson, Waco, for petitioner.

Clark, Fisher, Gorin, McDonald & Ragland, Leonard L. Gorin, Waco, Robert G. Carter, Marlin, for respondent.

ON MOTION FOR REHEARING

STEAKLEY, Justice.

Our prior opinion delivered under date of September 27, 1977, is withdrawn and the following opinion is substituted therefor.

Tri-County Water Supply Corporation sued A. F. Conner and Sons, Inc., and Fidelity & Deposit Company of Maryland, the surety on Conner's performance bond, for damages resulting from Conner's alleged breach of a contract to construct a water

distribution system. After a jury trial, and upon the basis of findings later noted, the trial court rendered judgment in favor of Tri-County for $389,815.85 plus prejudgment interest at the rate of six per cent per annum from December 13, 1970 in the sum of $75,282.25, and that Fidelity & Deposit recover over and against Conner. The Court of Civil Appeals ordered a remittitur of $119,542.33 and otherwise affirmed the trial court's judgment. 541 S.W.2d 856. We reverse these judgments and remand the cause for a new trial.

Tri-County Water Supply Corporation is a non-profit corporation authorized to own and operate a water supply system in the rural area of eastern Falls County, Texas. In February of 1968, Tri-County contracted with Duff Engineers to make an engineering study of the feasibility of constructing a water supply system. Upon a favorable recommendation, Tri-County authorized Duff Engineers to solicit bids for the construction of the system. In October of 1968, Tri-County accepted the bid of A. F. Conner & Sons, Inc., and entered into a contract under which Conner was to construct the water supply system consisting of five pump stations and approximately 178 miles of plastic pipeline. The contract provided that all workmanship and materials would be of good quality and that upon completion of the work Tri-County would pay Conner the sum of $522,480.13, of which $389,815.53 was in payment for the pipeline. The contract also obligated Conner to replace or repair any defective material or equipment discovered within one year of completion. Duff Engineers was designated as the inspecting engineering firm. The certificate of completion was executed June 4, 1970, and thereafter numerous leaks and other defects were discovered. It appears that Conner ceased repairing the leaks and other defects on December 13, 1970.

Tri-County sued Conner in April of 1971, and alleged that the defects in the system rendered it "not reasonably fit for the purpose of the water distribution system" and that Conner had failed to discharge the contractual duty to repair the system and remedy the defects. Tri-County sought

damages of $389,815.85, the value of the pipeline. There have been two trials. Upon the first trial in December, 1972, the jury found that the materials and workmanship used by Conner were not of good quality; but that Conner had substantially performed the contract, and that the reasonable cost of repairing and replacing the defective pipe and adapters was $4,853.77. The trial court rendered judgment on the verdict for Tri-County in the amount of $4,853.77; but upon the subsequent motion of Tri-County the trial court set aside this judgment and ordered a new trial on grounds not herein material.

One of the witnesses at the first trial was Mr. William Garner who had been an employee of Duff Engineers for some time and was an experienced inspector. He was directly responsible for supervising and inspecting the construction of the system. At the first trial, Garner testified that he had visited the job site on at least thirty-seven separate occasions and had personally inspected the construction. He testified that numerous leaks were discovered throughout the system after the June 4, 1970 completion date. He further testified that he believed the leaks would not stop and that, in his opinion, the workmanship and materials used by Conner were bad. Garner also said he believed that the only way to put the pipeline in "A–1" shape would be to lay a replacement line and completely abandon the Conner pipeline. Garner also stated that, in his opinion, the line as constructed had no value.

After the first trial concluded, Tri-County expanded the water supply system. This new addition began from the same well as the old system and was some 110 to 120 miles long. It ran in a different direction from the old system and shared only the well in common with the old system. The new system was also designed by Duff Engineers and was supervised and inspected by Duff's employee, Garner. Construction was by Brazos Construction Company. The new system differed from the old in that an aerator was designed and installed to cool the water before it went into the plastic

pipeline. It was also shown that the temperature of the water affects the strength of the pipe, the amount it contracts and expands, and the pressure at which the system is operated.

The second trial was set for Monday, January 28, 1974. On the preceding Friday, January 25, counsel for Tri-County advised Conner and Fidelity that Garner was in a Waco hospital and would be unable to testify; and that arrangements had been made to have his testimony at the first trial transcribed for introduction at the forthcoming trial. On the same date Tri-County, by written motion, requested the trial court to direct the court reporter to transcribe Garner's testimony at the first trial. In its motion Tri-County alleged that Garner "would be unable to appear as a witness in this cause scheduled for trial for the week of January 28, 1974, and that he was physically unable to have his deposition taken and that his testimony is essential to plaintiff's case and that his testimony was developed in the prior trial which commenced in December, 1973, [sic] and that defendant's counsel had full right to cross examination and therefore his testimony at the former trial is admissible during the trial commencing January 28th." The trial judge granted the motion and issued the order.

When the cause was called for trial on January 28, counsel for Fidelity made an objection to the proposed introduction of Garner's prior testimony and moved for a continuance until such time as Garner's deposition could be taken, or he could appear at trial. Counsel for Fidelity represented to the court that Garner was no longer in the employ of Duff Engineers and contended that the affidavit and testimony of counsel for Conner would further support his motions. The trial court then heard evidence of the following facts and circumstances:

1) On Sunday, January 20, counsel for Tri-County visited Garner at his home and reviewed his testimony. At that time Garner seemed well and fully able to testify. Counsel reviewed the entire testimony with Garner and spe-

cifically stressed the question of the system's value. Garner's answers were the same as those he had given at the first trial;

2) On Thursday, January 24, counsel for Tri-County learned that Garner was in the hospital and went immediately to see him. Garner informed counsel that he was scheduled to have a myelogram on Monday the 28th and surgery on the 29th to correct a low back condition. Garner further said that he was unable to be deposed because he was sedated, "full of shots," and suffering from diabetes;

3) On Friday, January 25, counsel for Tri-County verified Garner's continued hospitalization with his wife and then called counsel for Conner and Fidelity separately and informed them of Garner's unavailability and the motion to transcribe his prior testimony;

4) Upon receiving this call, counsel for Conner called Garner, whom he knew personally, at the hospital. Garner confirmed the fact that he was scheduled for surgery on the 29th. Garner also said that he would not give the same testimony at the second trial as he had at the first. Garner said that his opinion as to the value of the system would differ and that he would now testify that the pipeline had some value;

5) On January 26, the Saturday preceding the trial, another of the attorneys for Tri-County visited Garner, who again confirmed his unavailability for trial and inability to be deposed. No mention of a change of testimony was made.

On this evidence the trial judge overruled Fidelity's motion and objection, in which Conner had joined. The court indicated that when the prior testimony was offered with a proper predicate, it would consider a recess for the purpose of obtaining Garner's deposition. The parties then selected a jury and trial commenced.

Tri-County called James Duff as the first witness and he was questioned at length,

both on direct and cross examination. Throughout his testimony Duff made reference to Garner by name in connection with both the original system constructed by Conner and the expansion constructed after the first trial. Shortly after Duff completed his testimony, Tri-County offered the former testimony of Garner into evidence. In support of its offer and in addition to the evidence theretofore adduced at the hearing on Fidelity's motion, Tri-County offered the following sworn statement, dated January 29, 1974:

### AFFIDAVIT

My name is William Garner. I am now confined as a bed patient at Hillcrest Hospital, Waco, Texas, and will be so confined until February 1, 1974, at which time I will undergo surgery of a lumbar disk and after such surgery will be further confined for an undetermined period of time. On January 28, 1974 I underwent a myelogram and I am unable to appear and testify in the above cause and I am unable to give my testimony by oral deposition. If I were able to appear in the above trial, the facts that I would be able to furnish the Court and the jury would be the same as the facts that I formerly provided the Court and the jury in the previous trial of this cause.

Conner and Fidelity objected to the introduction of the testimony. Fidelity asserted that it had no opportunity to cross-examine Garner on the facts occurring between the first and second trials; that Garner was no longer an employee of Duff; that Garner's testimony would be different from his prior testimony; and that Garner's testimony with regard to the expansion of the system was needed. Conner argued that there had been developments since the first trial which necessitated Garner's present testimony and alleged that it needed the opportunity to cross-examine Garner about the expansion of the system. The court expressly noted that it was considering the evidence adduced at the hearing on Fidelity's motion and the evidence now presented to it and ruled that the testimony could be read to the jury because Tri-County had established a proper predicate for its introduction into evidence.

The jury thereafter heard testimony from several other witnesses. Members of the Tri-County Board of Directors testified as to their damages and the operator of the system testified about the number of leaks and his efforts at repairing them. The jury also heard testimony from an agricultural engineer with the U. S. Department of Agriculture who testified about the system and its value. Mr. Conner and his sons testified on their own behalf. The case was submitted to the jury on special issues. The jury found that Conner had used materials and workmanship that were not of good quality and that as a result the contract had not been substantially performed; that the promised market value of the water distribution system was $522,480.13; and that the value of the system as constructed was $132,664.28. The damages thus assessed by the jury were in the sum of $389,815.85. Based upon the verdict, the trial court awarded Tri-County $465,098.10, an amount representing the assessed damages plus interest at the rate of six per cent per annum from December 13, 1970. Conner and Fidelity appealed and the Court of Civil Appeals ordered a remittitur of $119,542.33 but otherwise affirmed the trial court judgment. The Court of Civil Appeals found no error in the admission of Garner's former testimony. We disagree.

As before indicated, Tri-County did not seek a continuance or recess of the trial because of the illness of Garner but elected instead to offer in evidence the transcription of his testimony at the prior trial. The governing rule has been broadly stated as follows:

"It is the settled law that under an exception to the general rule against hearsay evidence, 'testimony of a witness given at a former trial of the same case on substantially the same issues, and where there was opportunity for cross-examination, may be reproduced where it is shown that the witness is dead, or that he had become insane, or is physically unable to testify, or is beyond the jurisdiction of the court, or that his whereabouts is un-

known and that diligent search has been made to ascertain where he is, or that he has been kept away from the trial by the adverse party.'"

*Lone Star Gas Co. v. State,* 137 Tex. 279, 308, 153 S.W.2d 681, 697 (1941). *See also, Hall v. White,* 525 S.W.2d 860 (Tex.1975); *White v. Natural Gas Pipeline Co.,* 444 S.W.2d 298 (Tex.1969); and *Houston Fire & Casualty Insurance Co. v. Brittian,* 402 S.W.2d 509 (Tex.1966).

The unavailability requirement of the former testimony exception has its roots in English Common Law. When first recognized, the exception allowing the former testimony of a witness was granted only when it was shown that the witness had died before the second trial. *See, e. g., Harrison v. Blades,* 3 Camp. 457 (K.B.1813). Later the courts recognized certain specific types of absences as the equivalents of death and allowed the introduction of the former testimony upon a factually sufficient showing of true unavailability. Principal among the recognized and accepted types of unavailability were cases in which the witness was shown to be beyond the jurisdiction of the court and cases in which the witness was secreting himself from the parties and the court. R. Gresley, Equity Evidence 173–76 (2d Ed. C. Calvert 1848); 1 S. Greenleaf, The Law of Evidence, § 163g at 284–85 (16th Ed. J. Wigmore, 1889). The English courts were long reluctant to equate illness or infirmity with death and long refused to allow former testimony to be used in such circumstances. The courts feared that to allow the exception in cases of illness "might cause sudden indispositions and recoveries." *Harrison v. Blades, supra.* The rule of unavailability due to illness did come to be accepted by the English courts in time, however. *Fry v. Wood,* 26 Eng.Rep. 284 (1737).

The law concerning the unavailability requirement of the former testimony exception has developed in much the same manner in American jurisdictions. Death of a witness, of course, was and is universally recognized as a ground for the introduction of his former testimony. 5 J. Wigmore,

Evidence § 1403 at 204 (J. Chadbourne rev. 1974). In the case of a witness who is outside the jurisdiction of the court, a majority of the states hold that the necessary predicate to the introduction of his prior testimony is shown by proof of (1) permanent absence from the jurisdiction and (2) due diligence in attempting to secure the presence of the witness. *See, e. g., Oklahoma Alcoholic Beverage Comm. v. Lobo,* 391 P.2d 819 (Okl.1964); *Smith v. State,* 247 So.2d 705 (Miss.1970); *Matter of D. T.,* 237 N.W.2d 166 (S.D.1975). *See also,* Wigmore, *supra,* n. 5 at 205–09; Annot. 87 A.L.R. 891 (1940); Comment, *The Unavailability Requirement For Exceptions To The Hearsay Rule,* 41 Mo.L.Rev. 404 (1976). The same predicates are required by the majority of jurisdictions with respect to a witness whose whereabouts are allegedly unknown. *See, e. g., New York Central R. Co. v. Pinnell,* 112 Ind.App. 116, 40 N.E.2d 988 (1942); *Madrid v. Scholes,* 89 N.M. 15, 546 P.2d 863 (N.M.Ct.App.1976). *See also,* Wigmore, *supra,* n. 1 at 216–18; Comment; *The Unavailability Requirement For Exceptions To The Hearsay Rule,* 41 Mo.L.Rev. 404 (1976). When a witness is unavailable by reason of illness, however, the rules of the various jurisdictions that govern the predicate necessary for the admission of his prior testimony are not uniform.

In some early cases no distinctions were made between the witness who was absent from the jurisdiction, or whose whereabouts were unknown, and the witness who was ill. These cases required a showing of permanent illness in order to prove unavailability. *See, e. g., Markowitz v. Milwaukee Elec. R.R. Co.,* 230 Wis. 312, 284 N.W. 31 (1939); *Kirchner v. Laughlin,* 5 N.M. 365, 23 P. 175 (1890). Most of these decisions have been disavowed or have been overruled by statute. *See, e. g., State v. McFarren,* 62 Wis.2d 492, 215 N.W.2d 459 (1974); *In re Sweeney's Estate,* 248 Wis. 607, 22 N.W.2d 657 (1940); *Madrid v. Scholes,* 89 N.M. 15, 546 P.2d 863 (N.M.Ct.App.1976); N.M.Rule 4–804(a)(4) (1953). *See, also,* Wigmore, *supra,* § 1406. A more liberal view of admissibility is found in the later cases. A majority of states now admit the prior testimo-

ny of a sick witness who is temporarily but genuinely ill. See cases compiled in Wigmore, *supra*, n.1 at 219. The facts necessary to establish the predicate for admission of such testimony are not easily generalized. Some states seem to focus on the seriousness of the illness while others inquire more heavily into its continuing nature. *Compare, Sproul v. Fossi*, 548 P.2d 970 (Or.1977) *with Norburn v. Mackie*, 264 N.C. 479, 141 S.E.2d 877 (1965) *and Perkins v. Edwards*, 228 Ga. 470, 186 S.E.2d 109 (1971). Professor Wigmore, after compiling the cases, concluded that the better rule requires a twofold showing of the degree and duration of the illness rendering the witness unavailable to testify during the anticipated duration of the trial. Wigmore, *supra*, at 219–20.

The law in Texas concerning the unavailability requirement of the former testimony exception to the hearsay rule has developed in much the same manner as that of our sister states. In the context of a witness absent from the state we have said that the critical question is his unavailability; and we ruled that a witness temporarily absent from the state on a vacation trip at the time of the second trial had not been shown to be unavailable. *Hall v. White, supra.* See also *White v. Natural Gas Pipeline Co., supra*, to the same effect with respect to the claimed unavailability of a witness as beyond the jurisdiction of the court. In *Houston Fire & Casualty Insurance Co. v. Brittian, supra*, the medical witness resided in an adjoining county and at the time of the second trial was unavailable because he was performing emergency surgery. We noted that none of the established conditions supporting the prior testimony exception to the hearsay rule were claimed to exist and that a proper predicate had not been laid.

As before indicated, we have not had occasion to write directly upon the question of the admissibility of the prior testimony of a witness shown to be unavailable for personal testimony at a second trial because of temporary illness, whether physical or mental. We refused writ of error with the notation of no reversible error in *Harris v.*

*Reeves*, 421 S.W.2d 689 (Tex.Civ.App.1967, writ ref'd n. r. e.), in which the Court of Civil Appeals held:

> Testimony of an absent witness on another trial of the same case was admitted over defendant's objection that no proper predicate had been laid for its admission. The evidence was that the witness was unable to attend the trial because she was ill with bronchial pneumonia and was taking medication for the illness. The witness was cross-examined on the former trial. The issues were substantially the same. Under these circumstances the testimony was admissible as against the objection.

We note, however, that there was no point complaining of this holding in the application for writ of error in *Harris*, and the issue was therefore not before the court. Illustrations of differences in approach to the problem are found in *Missouri, Kan. & Tex. Ry. Co. v. Bush*, 310 S.W.2d 404 (Tex. Civ.App., 1958, writ ref'd n. r. e.).

■ The proponent of the testimony of a witness who testified at a prior trial, but who is unable to do so at a subsequent trial because of a temporary illness, has two alternatives: that of moving for a continuance or recess of the trial until the witness recovers from the disability and becomes available for personal or deposition testimony; or that of offering the prior testimony of the witness as an exception to the hearsay rule. The ruling in each instance is addressed to the discretion of the trial court. The proponent of the prior testimony is under the burden of showing the degree and duration of the illness of the witness and that he has exercised due diligence. There may be circumstances where the party opposing the admission of the prior testimony is also under a burden of showing diligence. Neither is the case where, as here, it was shown that the illness of the witness was genuine; that it occurred on the eve of trial to the surprise of the parties; and that the illness of the witness was such as to preclude his being deposed.

Absent a question of diligence, the problem becomes one of fairness to the respective parties, together with the orderly and expeditious administration of justice, under the facts and circumstances shown to the trial court. In our opinion, those shown here establish that the trial court erred in admitting the prior testimony of Garner.

■ The facts and circumstances before the court when the testimony was offered demonstrated that Conner and Fidelity would be prejudiced by the admission of the testimony. James Duff in his previous testimony had made frequent references to Garner by name. He had testified that Garner supervised and inspected the construction of the new and the old systems; that the new system was different; that the bulk of his knowledge came from Garner's reports; that Garner had left his employ; that Garner had written a letter to Conner; that Garner had been specifically requested to be the inspector of the construction by Conner; that Garner had worked with the plant operator in repairing the leaks; and that Garner had assisted in testing the expansion project. These facts were supplemented by the representations of counsel for Conner and Fidelity that Garner had stated that his testimony at the time of the second trial would be less favorable to Tri-County than before. Tri-County challenged this representation and the dispute thus arising could only be settled by the personal testimony of Garner at the second trial. It was also shown to the court that there had been a change in circumstances between the first and second trials; an example of which was the expansion of the system.

Essentially these same considerations compel the further holding that the error of the trial court was such a denial of the rights of Conner and Fidelity as was reasonably calculated to cause and did cause the rendition of an improper judgment. See Rule 503, Texas Rules of Civil Procedure.

As to this, it is particularly to be noted that although the testimony of other witnesses concerning the value of the pipeline may be said to be of the same general effect as that of Garner, none had his firsthand inspection knowledge and responsibility. For example, the witness James Duff, owner of the firm of Duff Engineers, the engineering consultants for the construction of the pipeline, testified that Garner was his inspector and reported to him. Necessarily, Duff's testimony as to value was based in major part on these reports. Other witnesses who testified as to the value of the system were Leon Afinowicz and Kay Juan. Afinowicz was the plant superintendent for the City of Marlin. His responsibility was to keep the system operating. In speaking of pipe samples that he cut out of the line he expressed the opinion that they were improperly put together; that he found some bad materials; and that the quality of the workmanship was not good. The witness Juan was an agricultural engineer for the U.S. Department of Agriculture. His responsibility was to determine in the early operations whether the facility was performing as anticipated in the design. He testified that he had examined leaky pipe specimens and that the joints were not of good quality workmanship. He said that the joining of the pipes was improperly made and that a majority of the material did not meet the minimum acceptable wall thickness; and that three-fourths of the pipe examined did not meet the specifications. Garner was thus the only witness whose testimony was based on repeated and actual inspections of the pipeline during construction and as such his prior testimony undoubtedly carried significant weight with the jury. Moreover, as we have noted, there was considerable dispute as to whether the testimony of Garner would be less favorable to Tri-County at the second trial than before. Cf. *Houston Fire & Casualty Co. v. Brittian*, 402 S.W.2d 509 (Tex.1966).

We agree with the rulings of the Court of Civil Appeals in other respects brought forward, a further discussion of which is not necessary.

The Motion for Rehearing is overruled. The judgments of the courts below are re-

versed and the cause is remanded to the trial court.

Dissenting opinion by McGEE, J., joined by GREENHILL, C. J.

McGEE, Justice, dissenting.

I respectfully dissent.

At issue in this case is the former testimony exception to the hearsay rule. In order for the testimony given by a witness at a former trial to be admissible at a subsequent trial between the same parties, it is necessary to show that the former trial was on substantially the same issues, that there was an adequate opportunity for cross examination, and that the witness at the time of the subsequent trial was unavailable to testify. *White v. Natural Gas Pipeline Co.*, 444 S.W.2d 298 (Tex.1969). The principal problem, as in this case, usually concerns satisfaction of the unavailability requirement. It has often been stated that this requirement is met when, among other things, it is shown that the witness is physically unable to testify. *See Lone Star Gas Co. v. State*, 137 Tex. 279, 153 S.W.2d 681 (1941); *Houston Fire & Casualty Co. v. Brittian*, 402 S.W.2d 509 (Tex.1966). Illness would certainly come within this category. I do not take issue with the majority's statement that the proponent of the prior testimony has the burden of showing the degree and duration of the illness of the witness and that he has exercised due diligence. Such a rule will assist the trial courts in obtaining the best evidence necessary to resolve the issues before them.

I strongly disagree, however, with the holding of the majority that the trial court erred in admitting the prior testimony of Garner. I think that Tri-County satisfied the rule as stated above and laid a sufficient predicate to allow the admission of Garner's prior testimony. The majority opinion admits as much, but then states that the problem then becomes one of fairness to the respective parties, together with judicial efficiency, under the facts and circumstances shown to the trial court. Much reliance is placed upon the representations of Conner's counsel that Garner had indicated that his testimony at the time of the second trial would be less favorable to Tri-County than before because Garner would now testify that the pipeline had "some value." Based on this representation, this Court has concluded that Conner and Fidelity would be prejudiced by the admission of the former testimony. The majority, in effect, has held that the trial court abused its discretion in admitting the prior testimony of Garner. My view of the facts and circumstances before the trial court does not lead me to the result reached by the majority.

Mr. Garner was an impartial witness in this case. He was not an employee for either of the parties to the suit. His testimony covered many phases of the construction and inspection of the water system. His testimony was most important, however, with regard to the market value of the pipeline. He clearly stated at the first trial that to put the pipeline in proper condition would require the complete replacement of the pipe, that it could not be salvaged, and, therefore, the pipeline had no market value.

The pertinent facts reveal that on January 20th, counsel for Tri-County personally conferred with Garner. Garner indicated by his answers to counsel's questions that his testimony would be the same as that given at the first trial, including his opinion that the pipeline had "no value." Counsel for Conner, on the other hand, stated that during a telephone call to Garner at the hospital on January 25th, Garner informed him that he would not give the same testimony at the second trial as he had at the first trial; that he would now testify that the pipeline had "some value." Without more, admission of the prior testimony based on these two conflicting statements might constitute an abuse of the trial court's discretion. However, other evidence was before the trial court which indicated that Garner's testimony would not be any different from that given at the first trial. On January 26th, counsel for Tri-County visited Garner in the hospital, at which time Garner stated his unavailability for trial

and inability to be deposed. When informed that his prior testimony would be transcribed, he responded by saying that he thought it would be a good idea because his testimony would be the same. Finally, in support of its offer of the former testimony of Garner into evidence, Tri-County offered a sworn statement by Garner, dated January 29th, which in pertinent part stated:

"If I were able to appear in the above trial, the facts that I would be able to furnish the Court and the jury would be the same as the facts that I formerly provided the Court and the jury in the previous trial of this cause."

I think that it is clearly indicated by the affidavit and the conversations of January 20th and 26th that Garner's answers would have been the same as those given at the first trial, including the fact that he believed that the pipeline had "no value." Therefore, the testimony of Garner would not be less favorable to Tri-County as asserted by counsel for Conner. Given the opportunity to adequately cross-examine Garner at the first trial, I fail to see how Conner and Fidelity were prejudiced by the admission of the former testimony. Under the circumstances, I find no error that would call for a reversal and remand of this cause for a third trial.

I would affirm the judgment of the court of civil appeals.

GREENHILL, C. J., joins in this dissent.